**Marquis & Aurbach**
ALBERT G. MARQUIS, ESQ.
Nevada Bar No. 1919
E-mail: amarquis@marquisaurbach.com
JASON M. GERBER, ESQ.
Nevada Bar No. 9812
10001 Park Run Drive
Las Vegas, Nevada 89145
Phone: (702) 821-2427
Fax: (702) 382-5816
E-mail: jgerber@marquisaurbach.com
Attorneys for Defendants Maryland Square
Shopping Center, LLC, the Herman Kishner Trust
dba Maryland Square Shopping Center,
Irwin Kishner, Jerry Engel,
Bank of America, as Trustees for
The Herman Kishner Trust, and
Maryland Square, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PETER J. VOGGENTHALER; VICTOR BECERRA; ARTHUR BODENDORFER; BRENDA C. CHAFFIN; MICHAEL J. SOLMI; JASON COWLES; JANE GAUTHIER; HONORE' GAUTHIER; NIKOLAS KONSTANTINOU; DRAGAN KURAJICA; KENNETH LOWTHER; JAMES LUEHMANN; JACQUELINE LUEHMANN; RUTH MANNHEIMER; WILLIAM MONTERO; BARBARA MONTERO; CLIFFORD ROGERS; SHARON ROGERS; HERMANN ROSNER; MARKUS ROTHKRANZ; DANIEL SOLDINI; CHARLES WALKER; VERNA WALKER; JACK YENCHECK; OFELIA YENCHEK, all individual and as Plaintiff Class Representatives, <br><br> Plaintiffs, <br> vs. <br><br> AL PHILLIPS THE CLEANER, INC., a Nevada corporation; DCI USA, INC., a Nevada corporation; MARYLAND SQUARE, LLC, a Nevada Limited Liability Company; MARYLAND SQUARE SHOPPING CENTER LIMITED LIABILITY COMPANY, a Nevada Limited Liability Company; DOES I through X; and ROE corporations XI through XX, <br><br> Defendants. | Case No:   2:08-CV-01618-RCJ (GWF) <br><br> **OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

Defendants, Maryland Square Shopping Center, LLC, the Herman Kishner Trust, dba Maryland Square Shopping Center, Irwin Kishner, Jerry Engel, Bank of America, as Trustees for The Herman Kishner Trust and Maryland Square, LLC (hereinafter collectively "the Maryland Square Defendants"), through the law firm of Marquis & Aurbach, hereby respectfully submit their Opposition to Plaintiffs' Motion for Summary Judgment.

I. **INTRODUCTION.**

Plaintiffs have submitted a barebones motion for summary judgment that completely ignores the central factual dispute:   Whose PCE is in the plume?

As plaintiffs concede at page 8, lines 10-11, there must be "a causal relationship between the defendant and the harm" and it is the Plaintiffs' burden to produce evidence demonstrating there is no genuine causation dispute.  The motion for summary judgment is devoid of any mention that causation disputes are the subject of two Federal Court actions, a state court action, and a NDEP administrative investigation, none of which can be resolved by summary judgment, or otherwise, until the Maryland Square Defendants' newly retained consultant (Tetra Tech) completes the investigation on the disputed causation issues as to whether Dr. Clean, Boulevard Mall tenants (where the highest PCE concentrations are located) and/or other third party defendants are the cause of the PCE plume, not Al Phillips the Cleaner.

To say the motion for summary judgment is premature would be an understatement.  In fact, the timing is most interesting because it came just after plaintiffs were advised of the need for the investigation by Tetra Tech, which was one of the reasons the Maryland Square Defendants moved this Court for an order continuing the deadlines in the pre-trial order.  At a minimum, judgment, this Court should deny or continue the Motion for Summary Judgment based on Rule 56(f), which confers wide discretion to this Court to allow for additional discovery before a summary judgment hearing, or to make such orders as may be  just to protect parties from a premature grant of summary.

/ / /

/ / /

/ / /

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

II.     **STATEMENT OF PROCEDURAL HISTORY.**

The Maryland Square Defendants are the owners of the former Maryland Square Shopping Center previously located on Maryland Parkway in Las Vegas, Nevada.[1] The structure at the Maryland Square Shopping Center has been demolished for several years. See **Ex. A**. However, in the years past, when the shopping center was occupied, its tenants included Al Phillips The Cleaner, a dry cleaner.  Id.  The Shapiro Brothers Defendants were the owners of the dry cleaner located in the Maryland Square Shopping Center for much of the time at issue in this case. Id.

A.     **NDEP'S DISCOVERY OF A PCE PLUME AND THE PREVIOUS LITIGAITON.**

In 2002, low levels of PCE in groundwater were discovered by the NDEP in an area to the east of the Maryland Square Shopping Center.[2]  Soon after, Maryland Square Shopping center sued Al Phillips the Cleaners and the Shapiro Brothers Defendants for liability arising out of the alleged contamination (the "original Complaint").[3]  The Original Complaint was based upon information and belief in 2002, and is not based on scientific data establishing the cause of the plume.  See **Ex. C**.  No findings of fact were ever entered based on the Original Complaint and the Parties eventually agreed to dismiss the claims.[4]

Beginning in 2005, the NDEP pursued what it believed to be the responsible parties and developed a plan for testing and eventually remediating the plume.[5]  Originally, Al Phillips the Cleaners voluntarily agreed with the NDEP to monitor and test the PCE concentrations in the plume; however, when Al Phillips the Cleaners declared bankruptcy, the Maryland Square Defendants voluntarily agreed to complete the investigation.  See **Ex. A**.

---

[1] See Affidavit of Jerry Engel attached as **Ex. A**.

[2] See PCE clean up options attached as **Ex. B**.

[3] See Complaint in Case No. CV-S-02-1218 attached as **Ex. C**.

[4] See April 5, 2004 Stipulation for Dismissal attached as **Ex. D**.

[5] See September 6, 2005 correspondence regarding subsurface investigation attached as **Ex. E**.

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

The testing performed to date indicates a plume of PCE with the highest PCE concentration under Boulevard Mall (adjacent to plaintiffs' neighborhood), not under Al Phillips the Cleaner. (See Geyer Declaration) Boulevard Mall has numerous wells on site, some of which were installed for the investigation of the plume that is the subject of this action, and some of which have nothing to do with the subject plume.[6] One well identified as MW-11 has yielded the removal 7000 gallons of petroleum products, which according to the scientists, requires a comprehensive investigation as to whether PCE was also released by whomever is responsible for the petroleum contamination, which certainly is not Al Phillips the Cleaner, who never used any petroleum products. Boulevard Mall housed other drycleaners, as well as Goodyear, JP Penny and Sears automobile repair facilities, all of which are common users of PCE.[7]

Dr. Clean is a drycleaner located at Maryland Parkway and Desert Inn Road (but not on Maryland Square property) and in 1993, Dr. Clean had a documented release of 300 gallons of PCE. See **Exhibit G** and **H**.[8] To date, there has been no investigation as to whether Dr. Clean, not Al Phillips the Cleaner, is responsible for the PCE in the subject plume. Because the testing that has been done to date does not establish the origin of the PCE in the plume that is not even under Al Phillips the Cleaner, it cannot be conclusively be determined as a matter of law in a motion for summary judgment that the Maryland Square Defendants are to blame.

**B.    STAY OF DISCOVERY.**

The Complaint in this case was filed on November 19, 2008. (#1). On January 20, 2009, the Maryland Square Defendants filed their Answer to the Complaint. (#86-#89). On April 17, 2009, a hearing was held to set the discovery plan and scheduling order for this litigation. (#143). In July, 2009, the parties filed interim status reports detailing efforts with regard to reaching a mediated settlement of this case. (#155). As such, through July, 2009, only limited

---

[6] See map attached as **Exhibit F**.

[7] See Declaration of Steven Geyer attached as **Exhibit G**.

[8] See Dr. Clean correspondence attached as **Exhibit H**.

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

discovery was completed as the parties worked towards settlement.[9] Those negotiations were put on hold as a result of investigations by the Maryland Square Defendants. <u>See</u> **Exhibit I**. As such, on November 6, 2009, this Court granted a request to extend all discovery deadlines and the trial date by six months. (#172). The close of discovery in this matter is now May 5, 2010. The trial date for this matter is now September 21, 2010. <u>Id.</u>

### III.   LAW AND ARGUMENT.

Plaintiffs have failed to meet the burden for summary judgment. The moving party bears the initial burden of demonstrating the exacting standard that there are no genuine material issues in dispute. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986); <u>See</u> <u>also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). That is, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>U.S. v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting <u>Celotex</u>, 477 U.S. at 323).

In assessing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. <u>See</u> <u>Batey v. Stone</u>, 24 F.3d 1330, 1333 (11th Cir. 1994); <u>See</u> <u>also</u> <u>Sheckells v. Agv-Usa Corp.</u>, 987 F.2d 1532, 1534 (11th Cir. 1993); <u>Browning v. Peyton</u>, 918 F.2d 1516, 1520 (11th Cir. 1990); <u>Clemons v. Dougherty County, Ga.</u>, 684 F.2d 1365, 1368 (11th Cir. 1982); <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)(per curiam).

---

[9] <u>See</u> Declaration of Jason M. Gerber, Esq. attached as **Exhibit I**. In July, 2009, the Maryland Square Defendants served written discovery on the Plaintiffs. However, the parties agreed to grant the Plaintiff an open ended extension to respond to the requests while settlement negotiations continued. As such, the Maryland Square Defendants still require answers to these requests and will work with the Plaintiffs to obtain the responses. Further, the Maryland Square Defendants will seek to depose one resident of each home owned by the Plaintiffs and numerous percipient witnesses. Additionally, extensive investigation and testing remains necessary to determine

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

Summary judgment is appropriate only when there is no dispute as to any material fact and only questions of law remain. See Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997). If the record presents factual issues, the court must deny the motion and proceed to trial. Adickes, 398 U.S. at 157; See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Stated otherwise, evidence on which the jury could reasonably find for the non-movant is reason for denial of summary judgment. Anderson, 477 U.S. at 251; See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### A.   SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE NO SUPPORTING ADMISSIBLE EVIDENCE.

Summary judgment must be denied because Plaintiffs failed to present admissible evidence eliminating any material issues or disputes of fact. A trial court can only consider admissible evidence in ruling on a motion for summary judgment. FRCP 56(e). The granting or denial of a summary judgment is based not only upon pleadings, but upon undisputed extrinsic facts presented by means of depositions, admissions and affidavits. Gillis v. Miners and Merchants Bank of Alaska, 271 F.2d 163 (9th Cir. 1959). The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of fact. Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001). In this case, the Plaintiffs failed to present any such admissible evidence.

Plaintiffs have no scientific data linking Al Phillips the Cleaner to the PCE in the plume, and therefore they resort to requesting judicial notice of a complaint for indemnity by Maryland Square against Al Phillips the Cleaner file and dismissed years ago. A court may only take judicial notice of a fact not subject to reasonable dispute, which is limited to facts either generally known or capable of accurate and ready determination. FRE 201(b). A court may not take judicial notice of any matter that is in dispute. Walker v.Woodford, 454 F. Supp. 2d 1007 (S.D. Cal. 2006). Documents that are a part of a public record may be judicially noticed to show that a proceeding occurred, but, a court may not take judicial notice of findings of fact from

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  another case. Id.  Here, the Plaintiffs' Motion for Summary Judgment relies almost exclusively
2  on this Court (a) taking judicial notice of allegations in an unrelated indemnity complaint that
3  has been dismissed and (b) making a factual determination that Al Phillips the Cleaner caused
4  the plume because Maryland Square so alleged in an indemnity complaint.  Plaintiffs rely not on
5  any scientific data concerning the contents of the plume and the origination of the contents, but
6  only on a previous amended complaint and the NDEP's recent Complaint.  (#164-4, 4-5).
7  Factual findings in one case ordinarily are not admissible for the truth in another case through
8  judicial notice.  Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003).  As a general rule, a trial court
9  may not take judicial notice of proceedings or records in another case so as to supply, without
10 formal introduction and evidence, facts essential to support a contention in a cause of action.
11 M/V American Queen v. San Diego Marine Construction Corp., 708 F.2d 1483 (9th Cir. 1983).
12 As such, complaints and NDEP preliminary correspondence does to constitute evidence of
13 undisputed material facts that may be judicially noticed, not even close.

14  **B.   SUMMARY JUDGMENT SHOULD BE DENIED ON THE BASIS THAT ADDITIONAL MATERIAL DISPUTED FACTS EXIST NOT JUST AS TO**
15  **CAUSATION.**

16 Summary judgment is also inappropriate at this time because additional material issues of
17 fact remain in dispute.  For instance, the element of the Plaintiffs' claims concerning imminent
18 and substantial endangerment is a question of fact and the Plaintiffs have not resolved the
19 material disputes with regard to this element.
20 The existence of imminent and substantial endangerment pursuant to the RCRA statute is
21 a question of fact.  See Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1014-15 (11th Cir.
22 2004); Cox v. City of Dallas, 386 F.3d 281, 300 (5th Cir. 2001) and Dague v. City of Burlington,
23 935 F.2d 1343 (2nd Cir. 1991).  The Maryland Square defendants are submitting the affidavit of
24 Steve Geyer of Tetra Tech, in which Mr. Geyer sets forth the disputes (questions of fact)
25 associated not only with causation of the PCE in the plume, but the nature and extent of any
26 vapors emitted from the plume.
27 Contamination is considered a substantial endangerment where citizens cannot enjoy the
28 environment or their health is at risk.  Cox. V. City of Dallas, 256 F.3d 281, 306 (5th Cir. 2001).

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

In this case, there has been no suggestion that the neighborhoods are unsafe such that the homes must be evacuated to avoid health risks. Far from it. Plaintiffs have failed to identify any "substantial" endangerment arising from the alleged PCE contamination. In fact, recent investigation by the Maryland Square defendants has demonstrated that previous testing of the vapor levels is potentially inaccurate. See **Exhibit G**. For instance, there is a dispute regarding whether there was adequate control for possible background sources of PCE vapor, which could be contributing to the initial readings. See **Exhibit G**. This failure is made even more important since the levels identified by the NDEP were low, indicating that the background levels could have a significant impact on the readings. See **Exhibit G**. It is also very significant that to date, the Maryland Square defendants have not even been provided the vapor testing results! See **Exhibit I**. As such, it remains a question of fact that must be investigated through further testing and discovery to determine whether substantial endangerment exists.

    **C.**    **EVEN IF MARYLAND SQUARE IS IN PART RESPONSIBLE FOR SOME OF THE PCE IN THE PLUME, SUMMARY JUDGMENT IS NOT APPROPRIATE BECAUSE LIABILITY AND CAUSATION ARE SUBJECT TO MATERIAL FACTUAL DISPUTES.**

In the recent United States Supreme Court decision entitled Burlington Northern and Sante Fe Railway Co. v. United States, 129 S. Ct. 1870, 1881 (2009), the Court held that a defendant must be allowed to demonstrate a reasonable basis for a judgment based on apportioned liability for a release of ground water contaminants. (CITE) Apportionment of environmental clean up costs, rather than the application of joint and several liability, is a further and important reason to deny summary judgment at this time. As discussed more fully above, a material disputes of fact exists as to whether Maryland Square is responsible at all for the PCE in the plume, and if the evidence later discovered suggests that Al Phillips The Cleaner did release some of the PCE now found in the plume, summary judgment that Maryland Square is liable for all PCE in the plume ignores the decision by the Unites States Supreme Court in June 2009.

    **D.**    **ADDITIONAL DISCOVERY IS NECESSARY BEFORE SUMMARY JUDGMENT CAN EVEN BE ADDRESSED.**

The Maryland Square Defendants respectfully request the Court deny summary judgment and allow the parties additional time to complete relevant and material discovery. A party may

oppose summary judgment by demonstrating that additional time is needed for discovery of relevant and material facts and evidence. See FRCP 56(f). A motion seeking additional time to permit affidavits to be obtained, depositions to be taken, or discovery to be completed in support of an opposition to motion for summary judgment must be made prior to a hearing on the summary judgment motion. Ashton-Tate Corp. v. Ross, 916 F.2d 516 (9th Cir. 1990). A district court's decision on a motion to continue summary judgment proceedings pending discovery is reviewed for an abuse of discretion. Burlington Northern Sante Fe R. Co. v. The Assiniboine and Su Tribes of Fort Peck Reservation, 323 F.3d 767 (9th Cir. 2003).

Rule 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence. Id. When a summary judgment motion is filed early in the litigation, before a party has any realistic opportunity to pursue discovery relating to its theory of the case, the Court should grant any Rule 56(f) motion fairly and freely. Id. In this case, the Plaintiffs' Motion for Summary Judgment came before any meaningful discovery has taken place and the Rule 56(f) request for extension of time should be granted.

### 1. Additional Discovery to Complete.

The Maryland Square Defendants submit that significant discovery is necessary to fully address the merits of the claims and defenses in this case. For instance, the Maryland Square Defendants are currently investigating the origin of the PCE in the plume, which involves costly and time consuming scientific studies that have just begun. See **Ex. I**. Further, additional discovery is necessary with regard to the records of the Dr. Clean contamination, clean-up and resolution. Id. Investigations will also continue with regard to the Boulevard Mall monitoring wells and any potential contamination from those sites. The Maryland Square defendants also believe depositions of the persons most knowledgeable for the Shapiro Brothers, the Boulevard Mall and Dr. Clean sites will be necessary, as well as depositions from representatives of the NDEP. Id. The Maryland Square defendants believe that this investigation and this discovery will provide evidence related to causation, the lack of any health risks and, eventually, the appropriate remediation of the plume. Id. As such, the evidence is necessary to properly address the claims, defenses, liability and potential damages in this case.

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

## 2. Expert Discovery is Necessary.

The Plaintiffs' Motion for Summary Judgment was filed before the Defendants even had an opportunity to disclose their experts and before the experts have been able to complete a critical investigation bearing on causation. This action is based on expert testimony. See **Exhibit G**. As such, expert testimony is necessary before a summary judgment hearing.

## 3. The Court has Already Provided Additional Discovery Time.

Finally, the Maryland Square Defendants are not asking for an extension to any of the currently discovery deadlines. In early November, 2009, the Court granted Shapiro Brothers' Motion and the Maryland Square Defendants Joinder to Extend Discovery Deadlines in this matter by six months. The parties are now meeting and conferring regarding discovery and the investigation of the plume, causation, contributors and the necessary remediation. See **Exhibits G and I**. As such, the Maryland Square Defendants' Rule 56(f) request in this case is brought in good faith.

## IV. CONCLUSION.

Based on the foregoing, the Maryland Square Defendants respectfully request the Court deny Plaintiffs' premature and unsupported Motion for Summary Judgment.

DATED: This 23rd day of November, 2009.

MARQUIS & AURBACH

By:/s/ Jason M. Gerber
ALBERT G. MARQUIS, ESQ.
Nevada State Bar No. 1919
JASON M. GERBER, ESQ.
Nevada Bar No. 9812
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for Defendants Maryland Square Shopping Center, LLC, the Herman Kishner Trust dba Maryland Square Shopping Center, Irwin Kishner, Jerry Engel, and Bank of America, as Trustee for The Herman Kishner Trust and Maryland Square, LLC

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM

# CERTIFICATE OF MAILING

I hereby certify that on the 23rd day of November, 2009, I served a copy of the foregoing **OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** upon each of the parties by e-mail and by depositing a copy of the same in a sealed envelope in the United States Mail, Las Vegas, Nevada, First-Class Postage fully prepaid, and addressed to:

Alexander Robertson, IV
Jennifer L. Taylor
ROBERTSON & VICK, LLP
401 North Buffalo Drive, Suite 202
Las Vegas, NV 89145

Jan Adam Greben
GREBEN & ASSOCIATES
1332 Anacapa Street, Suite 110
Santa Barbara, CA 93101
*Attorneys for Plaintiffs*

Kevin A. Brown
Whitney C. Wilcher
THAGARD REISS & BROWN, LLP
5528 South Fort Apache Road
Las Vegas, NV 89148
*Attorneys for Defendant Maryland Square LLC*

Jeffrey R. Diver
JEFFREY R. DIVER, P.C.
437 Anthony Street
Glen Ellyn, IL 60137

Randolph L. Howard
Joseph G. Went
KOLESAR & LEATHAM, CHTD.
3320 W. Sahara Avenue, Suite 380
Las Vegas, NV 89102
*Attorneys for Defendant CB Richard Ellis*

Neil J. Beller, Esq.
LAW OFFICES OF NEIL J. BELLER, ESQ.
7408 W. Sahara Avenue
Las Vegas, NV 89101

Jeffrey T. Oberman, Esq.
LEVIN & OBERMAN
361 N. Canon Dr.
Beverly Hills, CA. 90210-4704

Jeremy Gilman, Esq.
BENESCH FRIEDLANDER COPLAN & ARONOFF, LLP
200 Public Square
Suite 2300
Cleveland, OH 44114-2378
*Attorney for Defendants MELVIN SHAPIRO, Individually, and SHAPIRO BROS. INVESTMENT CO., a dissolved Nevada corporation*

and that there is a regular communication by mail between the place of mailing and the place(s) so addressed.

/s/ Roxanne Minnick
An employee of Marquis & Aurbach

M&A:04385-031 932392_1.DOC 11/23/2009 3:06 PM