UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PETER J. VOGGENTHALER, *et al.*, | |
| Plaintiffs, | Case No. 2:08-cv-01618-RCJ-GWF |
| vs. | **ORDER** |
| MARYLAND SQUARE, LLC., *et al.*, | |
| Defendants | |
| MARYLAND SQUARE SHOPPING CENTER, LLC., *et al.*, | **Emergency Motion to Extend Trial and Discovery Deadlines - #248** |
| Third Party Plaintiffs, | **Countermotion to Bifurcate - #270** |
| vs. | |
| GENERAL GROWTH MANAGEMENT, INC., *et al.*, | |
| Third Party Defendants. | |

This matter is before the Court on Defendants Maryland Square Shopping Center, LLC, et. al.'s Emergency Motion to Extend Trial and Discovery Deadlines (Second Request) (#248), filed on February 26, 2010; Plaintiffs' Opposition to Defendants' Emergency Motion and Countermotion to Bifurcate Third Party Defendants (#270), filed on March 15, 2010; the Shapiro Defendants Response to the Emergency Motion to Extend Trial and Discovery Deadlines (#269), filed on March 15, 2010; Defendant CB Richard Ellis, Inc.'s Non Opposition to the Emergency Motion to Extend Trial and Discovery Deadlines (#272), filed on March 16, 2010; and Defendants Maryland Square Shopping Center, LLC, et. al.'s Reply in Support of Motion to Extend Deadlines and Continue Trial Date and Opposition to Motion to Bifurcate (#282), filed on March 23, 2010. The Court conducted a hearing in this matter on March 30, 2010.

## BACKGROUND

The Plaintiffs, all of whom are residential homeowners, filed the complaint in this action on November 19, 2008. Plaintiffs' claims arise out of ground water contamination allegedly caused by the discharge of perchloreoethylene ("PCE") from an Al Philips the Cleaner dry cleaning facility (hereinafter "Al Philips facility") that was located in the Maryland Square Shopping Center from 1969 until 2000. The Maryland Square Shopping Center, which is now partly closed and demolished, is located on the westside of Maryland Parkway, a major north-south street in the south-central portion of the Las Vegas metropolitan area. The Boulevard Mall is located on the eastside of Maryland Parkway. Plaintiffs' homes are in a residential neighborhood located on the east side of the Boulevard Mall. The PCE discharged from the Al Philips facility allegedly developed into an underground "plume" which migrated eastward beneath the Boulevard Mall and eventually beneath Plaintiffs' residential neighborhood.

Defendants Maryland Square Shopping Center, LLC, the Herman Kishner Trust d/b/a Maryland Square Shopping Center, Irwin Kishner, Jerry Engel, Bank of America, as Trustees for the Herman Kishner Trust, Maryland Square, LLC and the Clark County School District (hereinafter "Maryland Square Defendants") are the current or former owners of the Maryland Square Shopping Center. Defendants Melvin Shapiro and Shapiro Bros. Investment Company, Inc. (hereinafter "Shapiro Defendants") owned and operated the Al Philips facility from 1969 until 1984 when it was sold to Johnson Group, Inc. The Johnson Group, Inc. was later sold and its name was changed to DCI USA, Inc. Johnson Group, Inc./DCI USA, Inc. owned and operated the Al Philips facility until 2000 when it closed. DCI USA, Inc. filed a Chapter 11 bankruptcy in July 2008.

This lawsuit arose from an investigation that was overseen by the Nevada Division of Environmental Protection ("NDEP"). *See Plaintiffs' Opposition to Defendants' Emergency Motion and Countermotion to Bifurcate Third Party Defendants (#270), Exhibit "7"*. PCE is a solvent/degreaser commonly used in dry cleaning operations. According to NDEP investigation reports, the PCE discharge at the Al Philips facility was first reported on November 29, 2000 during a routine environmental inspection performed as part of a property transaction. NDEP

received an initial environmental report regarding the discharge on July 21, 2001.  It was not known when the release of PCE into the ground at the Al Philips facility began.  NDEP initially determined that the levels of PCE did not pose an immediate health hazard, but that more investigation was required to determine if the PCE had migrated off site.  In late 2002 it was determined that the PCE had migrated off site, forming a "plume" in the groundwater.  Test results from monitoring wells on the Boulevard Mall property in 2003 and 2004 showed that the PCE plume had traveled due east beneath that property.  A July 2005 report indicated that the PCE plume had extended further east under the residential neighborhood. This was confirmed in 2006 by test results from monitoring wells installed in the residential neighorhood.

In October 2006, NDEP staff met with DCI USA, Inc. and directed it to (1) conduct soil vapor sampling in the residential neighborhood, (2) prepare a detailed investigation and plan for removal of the contaminant at the dry cleaner site, (3) prepare a groundwater corrective action plan, and (4) perform further characterization of off site groundwater contamination.  DCI agreed to complete an investigation and recommendations for soil cleanup at the Al Philips facility and to conduct soil gas sampling in the neighborhood.  A soil gas report was submitted to NDEP in April 2007.  Computer simulations based on the data in this report indicated a potential for vapor intrusion into the homes in the area.  The computer simulations or model also indicated, however, that there was no immediate health threat to residents.  The data and model, instead, suggested that indoor air concentrations of PCE in some of the homes could be above EPA's health-protective levels for long-term exposure (30 years or more).

In April 2007, NDEP notified DCI that it intended to move forward with further investigation and mitigation and would seek reimbursement from DCI and other potentially responsible parties.  NDEP thereafter notified potentially responsible parties about its intention to address the area affected by the spill and to require additional site assessment work and corrective action.  NDEP allegedly notified the Maryland Square Defendants and DCI of its intentions on June 19, 2007.  *See NDEP Complaint (#1)*, ¶ 20.  Beginning in August 2007 and continuing into early 2008, NDEP also notified residents, property owners, and local government officials of the PCE contamination in ground water under the neighborhood and its possible long-term health affects.

Following the filing of DCI's bankruptcy petition in July, 2008, NDEP notified the Maryland Square Defendants that it had expended approximately $160,000 to determine whether the PCE posed "a potential human exposure" in the residential neighborhood, that NDEP intended to expend additional state funds to address human exposures to PCE, and that NDEP would seek recovery of its expenses from the parties determined to be responsible for the release of contaminants from the Al Philips facility. *NDEP Complaint (#1)*, ¶ 22.

The Plaintiff-Homeowners filed this action under the Federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6972(a)(1)(B), on November 19, 2008. Pursuant to the RCRA, a private party may not commence an action under §6972(a)(1)(B) if the EPA Administrator or the State has already commenced an action concerning the same matter under the RCRA or under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9606. *See* 42 U.S.C. § 6972(b)(2)(B) and (C). The private party action or "citizen action" may also not be commenced until ninety days after the plaintiff has given notice of the action to the EPA Administrator, the State and the person(s) allegedly liable for remediation of the hazardous waste. §6972(b)(1)(B). Plaintiffs state that they provided the required notices more than ninety days before they filed their complaint in this action. *Complaint (#1)*, ¶¶ 56-59.

Plaintiffs seek a judgment requiring the Defendants to take such action as may be necessary to address and abate the contamination at the site. Plaintiffs also request an award of cost of litigation including reasonable attorneys' fees and expert fees, including future fees to monitor Defendants' compliance with any orders or judgments issued by the Court. *Complaint (#1)*, ¶¶ 71, 72. The Maryland Square Defendants, Shapiro Defendants and other defendants filed their answers in this action in January 2009. Although the owners and operators of the Boulevard Mall were originally named as defendants, the Plaintiffs voluntarily dismissed them without prejudice on April 10, 2009. *See Notice of Voluntary Dismissal of Certain Defendants (#133)*.[1]

---

[1] NDEP filed a civil action against the Maryland Square Defendants and the Shapiro Defendants in this District on May 4, 2009 to recover the past and future costs incurred in investigating and mitigating the PCE contamination pursuant to CERCLA, 42 U.S.C. §9607(a)(4) and Nevada statutory provisions, including NRS 459.537. *See NDEP v. Maryland Square*

On April 17, 2009, the Court approved the parties' proposed discovery plan and scheduling order which set a fact discovery cut-off date of October 1, 2009 and a cut-off date for all discovery on March 1, 2010. *Order (#142)*. The parties thereafter engaged in settlement discussions during which they informally agreed to postpone certain discovery and the filing of motions to compel. *See Joint Interim Status Report (#155)*, filed on July 31, 2009. According to the Maryland Square Defendants, "[i]n the fall of 2009, settlement negotiations broke off as the Maryland Square Defendants discovered evidence of other potentially responsible parties who could be contributing to the alleged PCE plume." *Motion to Extend Trial and Discovery Deadlines (#248)*, p. 8. On September 28, 2009, the Shapiro Defendants filed a motion to extend discovery and continue the trial date which was joined in by Maryland Square Defendants. While that motion was pending, the Plaintiffs filed their Motion for Summary Judgment (#164) against the Maryland Square Defendants on October 20, 2009. On November 11, 2009, the undersigned magistrate judge granted the Defendants' motion to extend discovery and continue trial. *Order (#172)*. The discovery cut-off date was extended to May 5, 2010 and trial was continued to September 15, 2010.

On January 22, 2010, the District Judge heard oral argument on Plaintiffs' motion for summary judgment. Plaintiffs' motion was predicated on the assertion that the PCE plume was caused, in whole or part, by the discharge of PCE from the Al Philips facility and that the PCE from the plume has "volatized into soil gas beneath the Neighborhood," thereby posing an imminent and substantial endangerment to the health of persons residing there. *See Plaintiffs'*

---

*Shopping Center, et.al.,* Case No. 3:09-cv-00231-RCJ-VPC. NDEP's complaint also seeks injunctive relief under NRS 445A.695 to require Defendants to complete an assessment of the extent and magnitude of the contamination resulting from releases from the Al Philips facility, to submit timely reports, to submit a corrective action plan and implement a corrective action plan. *NDEP Complaint (#1)*. NDEP's complaint does not assert an RCRA claim. NDEP stated, however, that it intends to seek leave to assert claims under RCRA as part of the action. *Id.*, ¶1. As of this date, however, NDEP has not moved to amend its complaint to allege a claim under the RCRA. The Maryland Square Defendants did not answer the NDEP action until March 18, 2010. It does not appear that the Shapiro Defendants were ever served by NDEP. On March 29, 2010, the Maryland Square Defendants filed a third party complaint in the NDEP action which names the Shapiro Defendants as third party defendants and also alleges claims against the same persons named in the third party complaint filed in this action.

5

*Memorandum of Law in Support of MSJ (#164)*, p. 3.

      The Maryland Square Defendants argued that Plaintiffs' motion for summary judgment should be denied because investigation and testing indicates that the highest level of PCE concentration in the plume is located beneath the Boulevard Mall and not under the Al Philips facility. Defendants argued that investigation has also revealed that there were automobile repair facilities on the Boulevard Mall property and gasoline service stations and other automobile repair facilities in the vicinity of the Boulevard Mall that used PCE products in their operations. These facilities reportedly discharged hydrocarbon products into the ground which may have included PCE that has contributed to the subject plume. Defendants also allege that Dr. Clean, another dry cleaning establishment located northwest of the Boulevard Mall, discharged approximately 300 gallons of PCE in 1993 which may have migrated into the plume beneath the Boulevard Mall. *Opposition to MSJ (#175)*, p. 3. Defendants therefore argued that there is an issue of fact whether the PCE in the plume beneath the Boulevard Mall and the residential neighborhood was caused, in whole or in part, by discharges from the Al Philips facility.

      Defendants also argued that genuine issues of fact exist as to whether the PCE poses a imminent and substantial danger to health. According the Maryland Square Defendants, recent investigation by their experts demonstrates that previous testing of the soil vapor levels in the residential area is potentially inaccurate. Defendants note that the levels identified by the NDEP were low to begin with and that further testing of vapor levels may show that the vapors do not pose an endangerment to the health of persons residing in the residential neighborhood. *Id.*, p. 8. Defendants therefore argued that they are, at minimum, entitled to conduct further discovery to obtain evidence in support of their opposition to Plaintiffs' motion for summary judgment.

      The Plaintiffs replied to the Maryland Square Defendants' arguments by asserting that liability under the RCRA is joint and several, although they acknowledge that under *Burlington Northern and Sante Fe Railway Co. v. United States*, 129 S.Ct. 1870, 1881 (2009), the Defendants may obtain apportionment of recovery costs between themselves and other defendants in an action under CERCLA if Defendants prove that a reasonable basis for apportionment exists. *Reply (#185)*, p. 2-4. Plaintiffs argued that imposition of an injunction requiring Defendants to

expeditiously mitigate the contamination should not be delayed while Defendants pursue apportionment or contribution claims against third parties. Plaintiffs also asserted that the standard of proof for showing that the hazardous waste *may* present an imminent and substantial endangerment to health or the environment is extremely lenient and that they have met their burden. *Reply (#185)*, pp. 4-5.

The Maryland Square Defendants stated in their November 23, 2009 opposition to Plaintiffs' motion for summary judgment that they were "not asking for an extension of any of the current discovery deadlines." *Opposition (#175)*, p. 10. Moreover, during the January 22, 2010 hearing on that motion, Defendants' counsel indicated that Defendants were prepared to work within the existing deadlines and "that we're not here to continue this thing." *Transcript of Motion Hearing (#270)*, p. 24. In granting Defendants' request for additional time to present evidence in opposition to the motion for summary judgment, the District Judge stated:

> I'm going to give them [Defendants] a 56(f) continuance not longer than May 15th, that's the deadline for discovery, and then we're going to set a renewed date for argument here. Certainly, both sides are at liberty to file additional briefing, I'm not denying it, certainly, but nor will I grant it at this juncture, and we'll ask for a new date shortly after May 15th for continued argument on the motion.[2]

*Transcript of Motion Hearing (#270)*, p. 28.

In their instant motion to extend trial and discovery deadlines filed on February 25, 2010, however, the Maryland Square Defendants state that they need additional time to conduct discovery and obtain evidence to support their defenses that the PCE was caused by the actions of third persons. Defendants state that the Boulevard Mall has denied them access to the monitoring wells or soils to perform additional testing which may reveal the source(s) of the PCE. They also assert that the NDEP has been unwilling to assist them in obtaining access to perform such testing and that NDEP refused to provide them with certain data unless they signed a confidentiality order. In addition, the Defendants attached a January 11, 2010 report from a consulting firm to NDEP which states that NDEP had requested the drilling of bore holes to assess the potential migration of PCE

---

[2]The actual discovery cut-off date is May 5, 2010.

from the Dr. Clean facility. *Motion to Extend (#248)*, pp. 10-11. Defendants also asserted that Plaintiffs' delay in responding to discovery supported their request for additional discovery time. *Id.*, pp. 9-10.

The Maryland Square Defendants also asserted in their motion to extend discovery that they had "just learned that the NDEP will be shortly amending its complaint . . . to assert a RCRA cause of action" and that upon NDEP so doing, the Maryland Square Defendants "will move immediately to dismiss or stay [this] action." *Motion to Extend (#248)*, p. 6. As of this date, however, NDEP has not moved to amend its complaint to assert an RCRA claim. As the Plaintiffs pointed out, as of March 15, 2010, the Defendants had not answered the NDEP's complaint and that action appeared to be moribund since its filing in May 2009.[3]

Finally, the Maryland Square Defendants seek to extend discovery and continue the trial date based on the third party complaint that they filed on February 3, 2010, one day before the deadline to amend pleadings and add parties. The third party complaint alleges claims against the owners of the Boulevard Mall, Goodyear Tire & Rubber Co., Wiens Properties, LLC, Sears Roebuck & Co., Terrible Herbst, Inc. and Superior Tire, Inc. for the alleged discharge of hydrocarbons and/or PCE which caused or contributed to the plume underlying the mall and residential neighborhood. The Maryland Square Defendants also assert a claim against Dr. Clean Management, Inc. based on the PCE discharge that reportedly occurred in 1993. The Maryland Square Defendants also allege claims against The Hoyt Corporation, Bowe Permac, Inc. and Goss-Jewett & Co. who allegedly supplied the dry cleaning equipment that was used in the dry cleaning operations at Maryland Square Property between 1968 and 2001. The third party complaint seeks recovery of response costs pursuant to CERCLA §107(a)(1-4)(B), 42 U.S.C. §9607(a)(4), contribution pursuant to CERCLA §13(f), equitable indemnity, and declaratory relief. The Maryland Square Defendants also allege a negligence claim against the Boulevard Mall third party defendants. On February 26, 2010, the Shapiro Defendants filed a motion for leave to file a third party complaint against the same parties. *See Motion for Leave to File Third Party Complaint (#249)*. That motion is

---

[3]The Maryland Square Defendants answered the NDEP action on March 18, 2010.

scheduled for hearing before District Judge Jones on June 1, 2010.

In addition to pointing out the inconsistency between Defendants' instant motion and their prior representations to the District Judge in regard to the summary judgment motion, Plaintiffs argue that Defendants have failed to show that they have diligently pursued discovery to justify a further extension of the deadlines. Plaintiffs argue that information regarding the contributions of third parties to the PCE plume, including automotive repair facilities, gasoline service stations and the Dr. Clean facility, have long been known. They also argue that Defendants could have obtained the information, inspections or testing referenced in their motion by subpoena or court order, but that Defendants failed to diligently pursue these options. Finally, Plaintiffs argue that the third party claims should be bifurcated so that Plaintiffs may expeditiously proceed with their RCRA injunctive relief action.

**DISCUSSION**

Local Rule (LR) 26-4 provides that applications to extend any date set by the discovery plan and scheduling order must, in addition to satisfying the requirements of LR 6-1, be supported by a showing of good cause for the extension. The good cause standard under LR 26-4 is the same as that for modification of the scheduling order under Rule 16(b) of the Federal Rules of Civil Procedure. As stated in *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992), the good cause standard primarily considers the diligence of the party seeking the extension. The Court's decision on whether to extend discovery and continue the trial date in this case depends in large part on whether the Court grants or denies the Plaintiffs' countermotion to bifurcate the third party claims. Denial of the countermotion will necessarily require an extension of discovery and the continuance of the September 2010 trial date since the third party defendants have only recently entered the action and are entitled to additional time to conduct discovery and to prepare their defenses.

Plaintiffs' action is based solely on the RCRA, 42 U.S.C. §6972. The RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste. The Supreme Court has noted that the primary purpose of the RCRA "is to reduce the generation of hazardous waste and to ensure proper treatment, storage and disposal of that waste

which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.' 42 U.S.C. §6902(b).'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S.Ct. 1251, 1254 (1996). The chief responsibility for implementation and enforcement of the RCRA rests with the EPA. The Act, however permits private citizens to enforce its provisions in some circumstances. *Id.*, 516 U.S. at 484, 116 S.Ct. at 1254. A private citizen suing under §6972 can seek a mandatory injunction that orders a responsible party to cleanup and dispose of hazardous waste. The citizen plaintiff may also obtain a prohibitive injunction to restrain further violations of the RCRA. *Meghrig* held that a plaintiff is not entitled to recover damages or compensation under the RCRA for past cleanup efforts. In so holding, the Court construed the statutory requirement that the solid or hazardous waste at issue "may present an imminent and substantial danger to health or the environment" as follows:

> The meaning of this timing restriction is plain: An endangerment can only be "imminent" if it "threaten[s] to occur immediately," Webster's New International Dictionary of English Language 1245 (2d ed. 1934), and the reference to waste which "may present" imminent harm quite clearly excludes waste that no longer presents such a danger. As the Ninth Circuit itself intimated in *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994), this language "implies that there must be a threat which is present *now*, although the impact of the threat may not be felt until later."

*Meghrig,* 516 U.S. at 485-6, 116 S.Ct. at 1255.

In applying this construction, *American Internal Specialty Lines Insurance Co. v. 7-Eleven, Inc.*, 2010 WL 184444 (N.D. Texas 2010) at *3, states that several courts have held that exceeding state limits on contamination levels, by itself, is sufficient to create a genuine issue of material fact as to the element of imminent threat. In *Wilson v. Amoco Corp.*, 989 F.Supp. 1159, 1174 (D.Wyo. 1998), the court, citing *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994), stated that a finding of imminent and substantial endangerment is permissible if the conditions giving rise to the threat are currently present, even though the impact of the threatened harm may not be realized, if ever, for many years. *See also Hoxsie Real Estate Trust v. Exxon Educ. Found.*, 81 F.Supp.2d 359, 365 (D.R.I. 2000). The immediacy and severity of the health risks posed by the hazardous waste will, however, affect the court's determination regarding the urgency and extent of the injunctive relief that should be imposed.

The Maryland Square Defendants were placed on notice by NDEP in 2007 and 2008 of the PCE plume and the possible health threat it poses to the Plaintiffs. Defendants state, however, that they did not obtain information showing that third persons, besides those connected to the Al Philips facility, were potentially responsible for the PCE plume until after discovery commenced in this lawsuit. In this regard, the Maryland Square Defendants received a report from Converse Consultants in June 2009 which indicated that there was insufficient evidence to show that sources other than the Al Philips facility caused the PCE plume. In late 2009 and early 2010, however, the Maryland Square Defendants received reports from their experts/consultants, Robert Howe and Steven Geyer of Tetra Tech EM, Inc., which indicate that there is evidence indicating that the PCE plume was caused, in whole or in part, by discharges from automotive repair facilities and gasoline service stations in the vicinity, and also from PCE discharged at the Dr. Clean dry cleaning facility in 1993.

Although the Court did not authorize the parties to do so, Plaintiffs and Defendants deferred discovery for several months while they engaged in settlement discussions. Plaintiffs therefore bear some responsibility for the delay in adjudicating this action that was caused by this deferral of discovery. In November 2009, the Court granted Defendants' first motion to extend discovery and continue the trial date based on the representation that they had recently discovered that third persons may have caused the PCE plume and that they needed to complete discovery of the "complex causation issues" before mediation or settlement negotiations could resume. *See Defendants' Reply In Support of Joinder to Motion to Modify Current Discovery Plan and Scheduling Order (#169)* (filed October 29, 2009), p. 2.

Based on the representations in their first motion to extend discovery, the Maryland Square Defendants probably knew that they would file a third party complaint if they developed evidence to support such claims. Defendants nevertheless stated in their November 23, 2009 opposition to Plaintiffs' motion for summary judgment that they were "not asking for an extension of any of the current discovery deadlines." *Opposition (#175)*, p. 10. By the time of the summary judgment hearing on January 22, 2010, Defendants surely knew that they would soon be filing the third party complaint. Defendants' counsel nevertheless told the Court that they were prepared to work within

the existing deadlines and "that we're not here to continue this thing." *Transcript of Motion Hearing (#270)*, p. 24. These statements undermine the credibility of Defendants' subsequent motion to again extend discovery and continue the trial date.

Plaintiffs also rebut Defendants' assertions that they have been unable to obtain necessary evidence by pointing out that Defendants did not subpoena relevant records from NDEP or timely move for a court order to obtain further inspections and additional testing on the Boulevard Mall property. The Court is also not persuaded that it should stay or delay the adjudication of Plaintiffs' RCRA action in favor of the NDEP's enforcement efforts. Contrary to Defendants' assertion, NDEP has not moved for leave to allege an RCRA claim. Nor is there any indication that NDEP is now aggressively prosecuting its action against the Maryland Square Defendants. Neither Defendants nor NDEP have moved to consolidate these two actions. But for the filing of the Third Party Complaint, the Court would conclude that Defendants have not shown good cause for a further extension of discovery or continuance of the trial date.

Rule 42(b) of the Federal Rules of Civil Procedure provides that for convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims. The rule confers broad discretion upon the trial court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues. *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002), citing *Exxon Co. v. Safec*, 54 F.3d 570, 575 (9th Cir. 1995). The provision for separate trials is intended to further many significant policies-- the parties' convenience, the avoidance of delay and prejudice, and the promotion of the ends of justice. Wright & Miller, *Federal Practice & Procedure* §2388 (3rd ed. 2008) at p. 92, citing *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 481-82 (6th Cir. 2007). Wright & Miller further states that the interest of efficient judicial administration is controlling under the rule, rather than the wishes of the parties. Piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course. Bifurcation or severance should only be ordered when the court believes that separation will achieve the purposes of the separate trial rule. *Id.*, at 92-96. The party seeking separate trials has the burden of proving that separation of the

claims is necessary. *Id.*, at p. 124, citing numerous federal district court decisions.

In *United States v. Shell Oil Co.*, 841 F.Supp. 962 (C.D.Cal. 1993), the court discussed the benefits of bifurcation in an action for recovery of response costs under CERCLA. In that case, the United States and the State of California sought to recover costs for cleaning up a hazardous waste site containing toxic byproducts of aviation fuel that the defendant oil companies had manufactured for the military during World War II. The defendants asserted counterclaims against the United States, alleging that it was a contributing responsible person. Defendants also alleged crossclaims against each other for apportionment and contribution. The court bifurcated the counterclaims and crossclaims so that plaintiff's cost recovery claim could be tried first. In so ordering, the court stated:

> The bringing of such claims and actions in pursuit of contribution is expressly provided for in section 113(f) of CERCLA. 42 U.S.C. § 9613(f). The purpose of section 113(f) is to mitigate the harshness of section 107 by providing for an eventual equitable sharing of costs among responsible parties. However, it was not intended and the Court will not allow it to be used as a tool to delay the securing of CERCLA's benefits to society.
>
> CERCLA clearly provides that cost recovery can be sought before any counterclaims are resolved. And the legislative history of CERCLA indicates that Congress intended for the government to be entitled to recover its costs prior to the resolution of any counterclaims or cross-claims for contribution. ("The Government should obtain the full costs of cleanup from those it targets for enforcement, and leave remaining costs to be recovered in private contribution actions".) *E.g.,* 132 Cong.Rec. S14,903 (daily ed. Oct. 3, 1986).

*Shell*, 841 F.Supp. at 975.

The *Shell* court concluded that the possibility of a future finding of partial liability against the federal government should not delay the expeditious recovery of response costs because the defendants would be reimbursed in the event the government was found liable. By contrast, the court concluded that requiring the plaintiff's cost recovery claim to be litigated with the counterclaims and cross claims would inappropriately prejudice the public welfare by slowing the replenishment of the Superfund. *Id.*

Other federal courts, however, have been more reluctant to grant bifurcation of cross-claims or third party claims in CERCLA actions. In *United States v. Dravo Corp.*, 2002 WL 1832274

(D.Neb. 2002), the government brought a CERCLA cost recovery action against two companies that operated a manufacturing plant which used a vapor degreaser to clean equipment. The degreaser, which allegedly contained trichloroethylene (TCE) and perchloreoethylene ("PCE"), was discharged into the aquifer from which the city drew its drinking water. The defendants filed a third party complaint against the company which supplied the degreaser and also against the city. The government moved early in the lawsuit to trifurcate the case. The first phase would involve discovery and trial regarding the liability of the defendants. The second phase would involve determining the amount of response costs that the defendants would be required to pay, and the third phase would determine "contribution, contractual and other third-party issues." *Id.*, at *2. *Dravo* stated that "the court's goal in a CERCLA action is twofold: to promote efficiency in cleanup of sites where hazardous waste is detected, and to promote the efficiency in the settlement of the civil action relating to the costs of the cleanup." *Id.* at *3, citing *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935 (8th Cir. 1995). In holding that these goals would not be served by bifurcation or trifurcation, the court stated:

> In this case, the court agrees with the defendants' contention that the present case does not present the complex factual background involved in the normal clean-up action brought under CERCLA. The defendants are only two, and they have agreed to act as a single defendant for the purposes of this action. See Defendants' Brief at 2. Only two third-party defendants have been named. The plaintiff's proposed case management order phasing discovery and trial contains no deadlines or schedule for discovery and trial of the second and third phases, noting only that these phases would be scheduled "upon completion of" the phase before it. See Proposed Order accompanying Plaintiff's Brief. To trifurcate the discovery and trial of this case would be to interject an element of uncertainty into what is a rather straightforward matter. The separation of the issues in this case would not be in the interests of justice, would not promote convenience, and would not serve to expedite the proceedings in any conceivable way. The court is reluctant at this time to cause the duplication and possible stays of discovery that are likely to result if trifurcation is approved.

*Id.*, at *5.

*Dravo* distinguished *United States v. Kramer*, 770 F.Supp. 954 (D.N.J. 1991), which granted bifurcation of the third party contribution claims in a CERCLA action. The court in *Kramer* held that the concerns regarding duplication of evidence that results from bifurcation were outweighed by the fact that nearly 300 third party defendants had been sued. *Kramer* also stated that joint trial of

14

the third party claims would multiply the issues through the addition of numerous equitable defenses that were not relevant to the primary action. *Kramer* therefore held that joint trial of the primary claims and third party claims would unduly complicate the issues and would delay plaintiff's prompt recovery of response costs, thereby frustrating CERCLA's purposes.

In *United States v. New Castle County*, 116 F.R.D. 19 (D.Dela. 1987), the court also declined to bifurcate trial of the third party claims for contribution brought against six third party defendants. Although the third party claims were asserted nearly six years after the CERCLA action was filed, the court stated that judicial economy and the interests of the parties and the public would be served by consolidating all claims together in one trial, thereby avoiding the duplicative presentation of evidence and witnesses. The court also believed that consolidation was the most effective means to facilitate settlement because the third party defendants would be encouraged to participate in settlement negotiations prior to any trial.

The strongest factor favoring bifurcation in this case is Plaintiffs' interest in promptly obtaining an injunction that requires the Maryland Square Defendants and Shapiro Defendants to abate the potential health hazard posed by soil vapors emanating from the PCE plume. Such an injunction, if warranted by the evidence, may be issued against the Maryland Square Defendants and Shapiro Defendants even though other persons also contributed to the PCE plume. The Court also recognizes that discovery regarding the third party claims will probably take longer than the six month discovery extension requested by the Maryland Square Defendants. The third party defendants need adequate time to review the evidence previously produced in this case, obtain evaluations by their own expert consultants, and conduct additional discovery pertinent to the particular claims against them. This process is likely to delay trial of Plaintiffs' RCRA claim for up to one year from the current trial date unless the third party claims are bifurcated.

The chief factor weighing against bifurcation is the avoidance of the duplicative presentation of evidence that two or more trials on the same issue entail. The Maryland Square Defendants and Shapiro Defendants will apparently defend against Plaintiffs' claims by arguing that the plume was not caused by PCE discharges from the Al Philips facility, but was instead caused by discharges from the automotive repair facilities and service stations in the area, and from the 1993 PCE discharge at

the Dr. Clean facility.  Given the evidence developed during the NDEP investigation, it is arguably unlikely that Defendants will completely avoid liability on this basis.  If they do prevail, however, then Plaintiffs may decide to bring an RCRA action against the third party defendants in order to obtain mitigation of the hazardous waste.[4]  On the other hand, if Defendants' causation defense is unsuccessful, they will still have to present substantially the same evidence in a second trial against the Third Party Defendants for contribution or equitable indemnity.  Under either scenario, a judgment in the first trial will not necessarily eliminate a second trial on the same issues.

Given the relatively small number of defendants and third party defendants in this case, judicial economy also favors litigating all of the claims in one proceeding.  Although this results in delay in bringing the principal claim to trial, consolidation may promote a complete settlement of the case by spreading the costs of mitigation through an agreement entered into by all potentially responsible parties.  As the court in *New Castle* observed, third party defendants are generally more likely to participate in early settlement negotiations if the claims against them are to be tried in the same proceeding as the plaintiffs' claims against the defendants.  The Court also recognizes, however, that discovery extensions and trial continuances tend to postpone serious settlement negotiations.

Plaintiffs have a reasonable and legitimate interest in the abatement of the PCE plume as soon as possible even if it creates *only* a risk to health from long term exposure (30 years or more) to the PCE fumes.  The presence of an unabated toxic waste problem in the residential community may also adversely affect the value of Plaintiffs' residences and their ability to sell those homes in an already depressed real estate market.  The Court concludes on balance, however, that Plaintiffs' reasonable and legitimate interests in a prompt resolution of this case do not outweigh the benefits of judicial economy that result from having the claims against all potentially responsible persons resolved in one action and one trial -- combined with the possibility that such consolidation *may*

---

[4] As *Scarlett & Associates, Inc. v. Briarcliff Center Partners, LLC*, 2009 WL 3151089 (N.D.Ga. 2009) at *10 states, numerous federal court decisions hold that the statute of limitations on an RCRA claim does not run if improperly discharged hazardous wastes continue to exist unremitted at the contamination site.

expedite a global settlement and abatement of the contamination. Based on the foregoing, the Court therefore concludes that Plaintiffs' countermotion to bifurcate the third party claims should be denied and that an amended discovery plan and scheduling order should be entered based on the joinder of new parties by virtue of the Maryland Square Defendants' Third Party Complaint. Accordingly,

**IT IS HEREBY ORDERED** that Defendants Maryland Square Shopping Center, LLC, et. al.'s Emergency Motion to Extend Trial and Discovery Deadlines (Second Request) (#248) is **granted** and Plaintiffs' Countermotion to Bifurcate Third Party Defendants (#270) is **denied.**

**IT IS FURTHER ORDERED** that the scheduling order is amended and extended as follows:

1. Last date to complete discovery: **November 1, 2010**
2. Last date to amend pleadings and add parties: **August 3, 2010**
3. Last date to file interim status report: **September 2, 2010**
4. Last date to disclose experts pursuant to Fed. R. Civ. P. 26(a)(2): **September 2, 2010**
5. Last date to disclose rebuttal experts: **October 4, 2010**
6. Last date to file dispositive motions: **November 3, 2010**
7. Last date to file joint pretrial order: **December 3, 2010**. In the event dispositive motions are filed, the date for filing the joint pretrial order shall be suspended until 30 days after a decision of the dispositive motions.

The Court recognizes that this scheduling order may be subject to further modification once the Third Party Plaintiffs and Third Party Defendants conduct their Rule 26(f) conference.

**IT IS FURTHER ORDERED** that current trial date of September 21, 2010 is vacated. The trial date is rescheduled for **March 15, 2011 at 8:30 a.m.,** with calendar call on **March 9, 2011 at 8:30 a.m.,** before Judge Robert C. Jones.

. . .

. . .

**IT IS FURTHER ORDERED** that a discovery status hearing is set for **Monday May 17, 2010 at 10:00 a.m.** in Courtroom 3A.

1   DATED this 14th day of April, 2010.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge