**Marquis & Aurbach**
JASON M. GERBER, ESQ.
Nevada Bar No. 9812
10001 Park Run Drive
Las Vegas, NV 89145
-and-
DONGELL LAWRENCE FINNEY LLP
MICHAEL C. HETEY, ESQ.
Nevada Bar No. 5668
RICHARD A. DONGELL, ESQ.  (PHV)
THOMAS F. VANDENBURG, ESQ. (PHV)
MICHAEL E. GALLAGHER, ESQ. (PHV)
2300 West Sahara Ave., Suite 800
Las Vegas, NV 89102
Phone:  (702) 856-4558 / Fax:  (702) 856-4301
Attorneys for Defendants Maryland Square
Shopping Center, LLC, the Herman Kishner
Trust dba Maryland Square Shopping
Center and Irwin Kishner, Jerry Engel and Bank of
America, as Trustees for The Herman
Kishner Trust

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PETER J. VOGGENTHALER, et. al.<br><br>                              Plaintiffs,<br><br>        vs.<br><br>MARYLAND SQUARE, LLC; et. al.<br><br>                              Defendants.<br><br>AND RELATED CROSS AND THIRD PARTY CLAIMS | Case No.:        2:08-cv-01618-RCJ-GWF<br><br>**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**<br><br>CONSOLIDATED WITH:<br><br>CASE NO.:  3:09-CV-00231-RCJ-GWF |
| STATE OF NEVADA, DEPT. OF CONSERVATION AND NATURAL RESOURCES, et. al.<br>                              Plaintiff,<br><br>        vs.<br><br>MARYLAND SQUARE SHOPPING CENTER, LLC, et. al.<br>                              Defendants.<br><br>AND RELATED THIRD PARTY CLAIMS | |

*MARQUIS & AURBACH*
*10001 Park Run Drive*
*Las Vegas, Nevada 89145*
*(702) 382-0711 FAX: (702) 382-5816*

I.    **INTRODUCTION**

On July 16, 2010, the Kishner Defendants served a Subpoena pursuant to FRCP 45 on Sears and Boulevard Mall to access their properties to conduct limited soil gas testing.  In this case, there are numerous likely contributors to the PCE plume, including Dr. Clean, tenants of Boulevard Mall and Sears.  According to Tetra Tech, the consultant for the Kishner Defendants, the testing is critical to the Kishner defense and third party claims because the resulting data will likely serve as essential causation evidence, indicating the plume contributors.   Both Sears and Boulevard Mall have denied access and refuse to comply with the Subpoena.  As such, the Kishner Defendants respectfully request this Court enforce the Subpoena and allow the Kishner Defendants to perform limited testing, as specified below, that will not burden Sears or Boulevard Mall.

II.   **STATEMENT OF FACTS.**

The Kishner Defendants were property owners of the shopping center on Maryland Parkway where an Al Phillips The Cleaners dry cleaning operation ran between 1968 and 2000. The homeowner Plaintiffs in this action alleged that PCE migrated in groundwater from the Al Phillips location beneath the Boulevard Mall property and beneath their homes.  (#1).  This Court recently granted summary judgment on behalf of the Plaintiffs and ordered the Maryland Square and Kishner Defendants to undertake remediation of the immediate threat.  (#390).  The Kishner Defendants are pursuing third party claims against Boulevard Mall, LLC, Sears Roebuck & Co., Goodyear Tire and Rubber Co, Wiens Properties, LLC, Superior Tire Inc, Dr. Clean Management, Inc., The Hoyt Corporation, Bowe Permac, Inc and Goss-Jewett & Co. and are in need of test data from the Boulevard Mall and Sears properties in order to establish the nature and extent of other PCE contributors to the plume.

A.    **SEARS AND BOULEVARD MALL PROPERTY.**

Sears and Boulevard Mall own a large piece of property east of the Maryland Square Shopping Center between Desert Inn and Twain.[1]   The property owned by Sears and Boulevard

---

[1] See map attached hereto as **Ex. 1**.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Mall lies in between the Maryland Square Shopping Center location and the eastward movement of the PCE plume.[2]   Tetra Tech believes that it is probable that businesses currently operating or previously operated on Sears and Boulevard Mall's property contributed to the PCE plume. See **Ex. 2**.

To date, the investigation by the Kishner Defendants' consultants has only been based on Phase I reviews of documents and records obtained from the NDEP, review of groundwater patterns and geological information of the relevant area and review of the quarterly monitoring history of the Maryland Square plume. See **Ex. 2**.  This review has yielded information regarding numerous dry cleaning or automotive repair and service businesses on or around the properties owned by the Boulevard Mall and Sears. See **Ex. 2**, Geyer Report pp 2-5.  Historically, all of these businesses use PCE during their normal operations. Id.  Further, review of NDEP records showed that several of the facilities had chemical spills of some kind that required cleanup. See **Ex. 2**.

Moreover, Tetra Tech's review of the data derived from quarterly testing of the monitoring wells (MW) in the plume show that PCE contamination from a source other that the Maryland Square site is contributing to the plume. Id. MW 13 is located on Boulevard Mall's property and the levels of PCE contamination at this well have been higher than those found at the Maryland Square site See **Ex. 2**, Howe Report, p. 5.  Since the highest concentrations will normally be associated with a source area, the presence of high concentrations of PCE at MW 13 indicates a source area located somewhere nearby on the Boulevard Mall Property. Id. Further, a 300 gallon spill of PCE at the Dr. Clean facility, located only blocks from the Maryland Square site, has created a documented PCE plume that Tetra Tech believes is contributing to the plume at issue in this case. See **Ex. 2**, Howe Report, p.6.  The Dr. Clean plume travels east across the property owned by Sears. See **Exs. 1** and **2**. The size of this plume has yet to be fully delineated. See **Ex 2**, Howe Report, p.6.  Based on this review and information, Tetra Tech concluded that it is probable other sources of contamination are contributing to the plume. Id.  Further

---

[2] See expert reports (exhibits omitted) of Robert Howe and Steve Geyer attached collectively as **Ex. 2**.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

investigation is necessary to determine the source locations, scope of contribution and to identify the party (or parties) potentially responsible for such releases.

**B.     THE PROPOSED TESTING.**

The Kishner Defendants need to perform passive soil gas testing on the Sears and Boulevard Mall properties.[3] The testing will include placing small probes for measuring the content of soil gases in a grid formation throughout the parking lots at Sears and Boulevard Mall. See **Ex. 9**.  The probes will be flush with the surface of the parking lot and will not interfere with parking at the property.  See **Exs. 5** and **9**.  The probes will measure the content of soil gases and will record whether there is any PCE in the soil gas.  See **Ex. 9**.  The findings from this testing will identify source locations where soil is contaminated with PCE on the Boulevard Mall and Sears' properties.  Further, at this time the size of the Maryland Square PCE plume has not been fully determined**.  It is axiomatic that all possible sources of ongoing contamination of groundwater (i.e. areas of contaminated soil) must be identified and addressed before one can successfully clean up groundwater**.  Soil gas testing will further define the PCE plume parameters and aid in determining the proper scope of remediation.  Passive soil gas testing of this type is the first step in the investigation process to determine the location of contamination sources.  Id.

Further, the testing is necessary to establish the nature and extent third parties contributed to the PCE plume.  Testing of MW 13 has shown that a PCE "hot spot" exists under the Boulevard Mall property.  See **Exs. 1** and **9**.  It is unlikely that PCE emanating from the Maryland Square site caused this PCE hot spot because the concentrations of PCE at MW 13 are historically higher than those concentrations found at the Maryland Square site.  See **Ex. 2**, Howe Report and **Ex. 9**.  Higher concentrations are normally found closer to a source of contamination – indicating a separate source location at the Boulevard Mall.  Id.  However, no testing has been performed to identify any other sources of this PCE hot spot. The testing proposed by the Kishner Defendants will provide information relevant to identifying the location

---

[3] See Declaration of R. Howe attached as **Ex. 9**.

1  of contamination sources for this PCE hot spot because the testing will identify the source of the

2  high readings from MW 13.  See **Ex. 9**.

3  Moreover, the testing is also necessary to explain PCE readings in monitoring wells on

4  the northernmost edge of the Maryland Square Plume. Generally, the groundwater at this site

5  moves in an east/southeast direction. Id.  However, PCE readings in monitoring well 33 are

6  northeast of the Maryland Square site. Id.  Given the groundwater flow in the area, it is unlikely

7  contamination from the Maryland Square site could be contaminating this monitoring well. Id.

8  Additionally, PCE vapors have been detected in low levels north of the current outline of the

9  Maryland Square Plume. See **Ex. 9**.

10  MW 33 is east/southeast from the Boulevard Mall and Sears properties. Id. The former

11  location of Sears' facility was located directly west of the northern monitoring wells. This site

12  previously had reported spills and testing for environmental contamination. Id.  However, the site

13  was never tested for PCE contamination even though PCE is commonly used in automotive

14  center operations. Id.  The passive soil gas testing will help identify the sources of contamination

15  for the northern most wells and help delineate the northern boundary of the plume. Id.

16  **C.      ATTEMPTS TO GAIN ACCESS.**

17  For months the Kishner Defendants attempted to negotiate access to perform limited soil

18  gas testing. Between March and July, 2010, the Kishner Defendants engaged in detailed

19  negotiations with Boulevard Mall.[4] Throughout the months of negotiations, the parties

20  exchanged a volume of emails concerning the scope of the planned investigation, the timing of

21  the investigation, insurance issues and additional details of concern to Boulevard Mall.

22  From the outset, the Kishner Defendants sought to provide information regarding the type

23  of testing to be completed, details concerning the space required for the testing and the time

24  necessary to complete the testing.  See **Ex. 4**. Moreover, the Kishner Defendants worked to

25  assuage any concerns regarding the impact of the testing on Boulevard Mall's business and

26  customer traffic. Id. The Kishner Defendants also provided detailed insurance information for its

27

28

_____

[4] See excerpts of emails attached collectively as **Ex. 4**.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  consultants and subcontractor to ensure Boulevard Mall would not bear any liabilities or costs

2  associated with the work. Id.  After numerous exchanges of information, maps, emails and draft

3  access agreements, Boulevard Mall refused access. See Ex. 4. In fact, after providing the

4  information previously requested by Boulevard Mall, new demands were made further delaying

5  access and testing. Id.  At that point, negotiations broke down without an access agreement being

6  reached. Despite this break down, the Kishner Defendants continued providing requested

7  information without further response from Boulevard Mall. See Ex. 4.  To date, Boulevard Mall

8  continues to refuse access for the testing.

9        The Kishner Defendants were also denied access to perform any testing on Sears'

10  Property. The Kishner Defendants first contacted counsel for Sears in April, 2010.[5]  The Kishner

11  Defendants hoped to reach an agreement and provided information concerning the testing and

12  the impact on Sears and its property. See Ex. 3.  However, Sears denied any access without

13  discussion or explanation. Id.

14        **D.      SUBPOENA AND REFUSAL TO COMPLY.**

15        On July 16, 2010, the Kishner Defendants issued Subpoenas to Boulevard Mall and

16  Sears.[6]  Both Subpoenas detailed the investigation the Kishner Defendants sought to have

17  performed. See Ex. 5.  Specifically, each Subpoena provided information necessary for the

18  access and testing to be completed. Id.  The Subpoenas also provided a detailed statement of the

19  work to be completed and the location of all monitoring probes. However, both Sears and

20  Boulevard Mall refused to allow access or to comply with the subpoena.

21        Boulevard Mall denied access for testing on alleged procedural and substantive grounds.[7]

22  Boulevard Mall mistakenly argued the subpoena was not timely since no discovery schedule was

23  established and there was no stipulation among the parties to allow discovery outside the

24  requirements of the Federal Rules of Civil Procedure.  See Ex. 6, p.1.  Further, Boulevard Mall

[5] See emails attached collectively as Ex. 3.

[6] See Subpoenas to Sears and Boulevard Mall attached as Ex. 5.

[7] See Correspondence from counsel for Boulevard Mall attached as Ex. 6.

M&A:04385-031 1165884_1.DOC 10/5/2010 10:28 AM

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    denied access because it claimed the Subpoena was vague and did not appear designed to

2    identify any relevant evidence. See **Ex. 6**, pp.1-2. Finally, Boulevard Mall alleged several

3    concerns with the actual testing to be performed – despite having received details and assurances

4    on these issues from the Kishner Defendants well in advance of the service of the Subpoena.  See

5    **Ex. 4** and **6**.   Sears also denied access with similar unsupported bases.[8]   Sears refused to

6    comply with the Subpoena because it was not served on all parties to the action, was allegedly

7    not procedurally correct and because Sears contended there was no legitimate basis to perform

8    the testing. See **Ex. 7**, pp. 1-2.

9        The Kishner Defendants responded to both Boulevard Mall and Sears and requested an

10   opportunity to meet and confer to discuss the Subpoena, the proposed testing and an access

11   agreement.[9]  Boulevard Mall never responded to the request for a meet and confer.  Sears agreed

12   to meet and confer; however, after the discussions between counsel, Sears denied access.

13   **III.    LAW AND ARGUMENT.**

14       A subpoena may issue for permission to inspect the premises.  See FRCP 45(a)(A)(iii).

15   A person who is commanded to permit inspection of premises need not appear for a deposition,

16   hearing or trial.  See FRCP 45(c)(2)(A).  At any time after the serving party receives an objection

17   to a request to inspect, that party may move for an order compelling inspection.  See FRCP

18   45(c)(2)(B)(i). The district court may refuse to enforce a subpoena where it finds the results

19   unreasonable and oppressive. Premium Service Corp. v. Sperry & Hutchinson Co.,  511 F.2d 225

20   (9th Cir. 1975). The burden of showing a subpoena is unreasonable and oppressive is upon the

21   party to whom the subpoena is directed. Goodman v. U.S., 369 F.2d 166 (9th Cir. 1966).  The

22   trial court acts in its discretion when determining whether to enforce a subpoena. U.S. v. Ochoa –

23   Sanchez, 676 F.2d 1283 (9th Cir. 1982).

24       In this case, the Kishner Defendants have sought access to perform testing on properties

25   owned by Boulevard Mall and Sears. The passive soils gas and ground water testing is necessary

26

27   [8] See Correspondence from counsel for Sears attached as **Ex. 7**.

28   [9] See Correspondence to counsel for Boulevard Mall and Sears attached as **Ex. 8**.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

1    to define the size of the Maryland Square plume, determine the remediation methodology and

2    establish the identity of all PCE contributors.  As such, the testing is necessary and relevant to

3    proceeding with claims and defenses in this action and to formulating a plan of remediation.

4    Finally, there is no burden to Sears or Boulevard Mall for complying with the Subpoena since

5    the Kishner Defendants are absorbing the costs and expenses and will ensure the protection of

6    the parking lots during and after the testing is completed.

7        A.       **PASSIVE SOILS GAS TESTING WILL IDENTIFY THE SIZE AND SCOPE OF THE PLUME AND IDENTIFY CONTAMINATION SOURCE**

8                   **LOCATIONS.**

9         Passive soils gas testing is relevant to all aspects of this litigation and this court should

10   enforce the subpoenas and order this testing.

11

12           1.      **Knowledge of the Size and Scope of Plume is Necessary to Appropriately Remediate.**

13        The soil gas testing proposed by the Kishner Defendants will help identify the scope and

14   size of the Maryland Square PCE plume. <u>See</u> **Ex. 9**.  To date, the actual size and location of the

15   Maryland Square plume has not been fully delineated.  The soil gas testing will identify locations

16   of PCE gases in the soil and help determine the outermost edges of the PCE plume. Further, the

17   testing will identify areas beyond the current outline of the plume that will require remediation.

18   Without this information, it is possible that the remediation will not be complete, that the

19   contamination will persist and unexpected or unforeseen issues will increase expenses during the

20   remediation. In fact, without the full scope of information and additional information on the size

21   of the plume, it is possible that time, effort and money would be expended without ever solving

22   the problem or eliminating all the sources of contamination.  As such, the proposed testing is

23   necessary to complete the remediation required by the Court and ensure compliance with the

24   injunction.

25           2.      **Soil Gas Testing will Identify Other Sources of Contamination.**

26        The information obtained from the testing is also necessary to identify contributing

27   sources of contamination.  The Kishner Defendants have alleged that operations at the Boulevard

28

M&A:04385-031 1165884_1.DOC 10/5/2010 10:28 AM

**MARQUIS & AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Mall and Sears locations have contributed to the Maryland Square Plume. (#224).  Further, the

2    experts retained by the Kishner Defendants believe that sources other than Maryland Square are

3    contributing to the plume and those sources are/were located on the Boulevard Mall and Sears

4    properties.  See **Exs. 2** and **9**.  In particular at least two issues specifically point to other sources

5    of contamination.

6         First, a "hot spot" of PCE exists under the Boulevard Mall that is not the result of PCE in

7    the groundwater emanating from the Maryland Square site. Id. The "hot spot" is located at MW

8    13 and has historically had higher levels of PCE than those at the Maryland Square site.  See **Ex**

9    **2**. Generally, the highest levels of contamination are found close to the source area – indicating a

10   source of PCE contamination on the Boulevard Mall property exists. See **Exs. 2** and **9**.

11   Secondly, the presence of PCE north of the outlines of the current PCE plume suggests

12   contribution from another source. It is unlikely that Maryland Square PCE could be contributing

13   to the positive readings in MW 33 since the PCE would need to travel north - against the

14   easterly/southeasterly direction of groundwater flow. See **Ex. 9**. It is also unlikely contamination

15   from the Maryland Square site would trigger soil gas readings measured north of the outline of

16   the plume since the ground water would not carry the plume in that direction. See **Ex. 9**.

17        Instead, the existence of PCE north of the plume indicates a source from the Boulevard

18   Mall or Sears properties is responsible for PCE in these wells. Id. This is especially true where

19   the former Sears location had documented chemical spills but was never tested for PCE

20   contamination. Id. The sampling of these areas, where concentrations of PCE in groundwater are

21   inconsistent with other observed concentrations, will assist in determining whether there are

22   other areas of contaminated soil located on the Sears or Boulevard Mall properties. Id.  Finally,

23   without investigation of the actual sites, the Kishner Defendants cannot develop the evidence

24   necessary to determine the source locations or scope of the contribution from sources on the

25   Boulevard Mall and Sears properties.

26        Passive soils gas testing is a first step in the process of identifying source locations

27   contributing to the Plume. The testing will show whether soil gases contain PCE anywhere on

28

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    the Sears or Boulevard Mall properties. Id. The testing will accomplish these goals with minimal

2    invasive work and disruption to the ongoing business at Sears and Boulevard Mall. See **Exs. 4**

3    and **9**.  Further, the information is necessary for the Kishner Defendants to advance their claims

4    in this litigation. Given the current scientific evidence supporting contribution from other

5    sources, the Kishner Defendants are entitled to the information derived from the proposed

6    testing.  As the testing will help provide crucial evidence necessary to address the remaining

7    claims and defenses in this case, the Subpoenas should be enforced.

8

9    **B.     THE SUBPOENAS ARE REASONABLE AS THEY PLACE NO BURDEN ON SEARS OR BOULEVARD MALL.**

10        Compliance with the Subpoenas will not burden Sears or Boulevard Mall.  The Kishner

11   Defendants' consultants are well aware of the importance of not disturbing the normal flow of

12   traffic for customers at these business locations. See **Exs. 4** and **9**. The Kishner Defendants'

13   consultants are also experienced in performing this type of testing and have already agreed to

14   return the parking lots to their pre-testing condition. Id.   Furthermore, the consultants and

15   subcontractors who will perform the work will provide the appropriate and reasonable insurance

16   coverage to provide protection against any harm or damages arising from physically performing

17   the testing on these properties.  Most importantly, the Kishner Defendants are absorbing all of

18   the costs of the testing.

19        Additionally, there is no threat of harm to the parking lots where the testing will be

20   performed. The corings that will be necessary to perform the testing will be slim, covered during

21   the short (14 day) period they are deployed and will be completely sealed so that traffic can drive

22   over each coring without issue. See **Ex. 1** and **5**. In fact, the corings themselves are less than 3

23   inches in diameter and will remain flush to the ground while in place. See **Ex. 4**.  Once the

24   testing is completed, Tetra Tech will ensure the corings are entirely repaired. See **Ex. 9**.  As

25   such, there is no burden of any kind on Sears or Boulevard Mall to comply with the Subpoena.

26   . . .

27   . . .

28

**MARQUIS & AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

M&A:04385-031 1165884_1.DOC 10/5/2010 10:28 AM

IV.     **CONCLUSION.**

The Kishner Defendants have made every effort to work with the Sears and Boulevard Mall entities to begin testing that is necessary and relevant to the claims and defenses in this case and the successful remediation of the Plume.   However, despite attempts at negotiation, the service of Subpoenas and an attempt at meeting and conferring, no access has been granted and no testing has occurred. The Kishner Defendants respectfully request this Court enforce the Subpoenas issued to Sears and Boulevard Mall as the evidence is relevant to claims and defenses in this case, there is no burden on Sears or Boulevard Mall and the appropriate resolution of claims and opportunity to address the PCE plume require that testing begin.

DATED:  October 5, 2010.                    Respectfully submitted by:

MARQUIS & AURBACH

By:/s/ Jason M. Gerber
     JASON M. GERBER, ESQ.
     Nevada Bar No. 9812
     10001 Park Run Drive
     Las Vegas, NV 89145
     -and-
DONGELL LAWRENCE FINNEY. LLP
MICHAEL C. HETEY, ESQ.
RICHARD A. DONGELL, ESQ.  (PHV)
THOMAS F. VANDENBURG, ESQ. (PHV)
MICHAEL E. GALLAGHER, ESQ. (PHV)
Attorneys for Defendants Maryland Square
Shopping Center, LLC, the Herman Kishner
dba Maryland Square Shopping
Center and Irwin Kishner, Jerry Engel and Bank of
America, as Trustees for The Herman
Kishner Trust

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**PROOF OF SERVICE**

I hereby certify that on this 5th day of October, 2010, a copy of the foregoing was filed electronically.   Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.   All other parties will be served by regular U.S. mail.   Parties may access this filing through the Court's system.

By/s/ Jason M. Gerber, Esq.
JASON M. GERBER, ESQ.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816