**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PETER J. VOGGENTHALER, et al.,

    Plaintiffs,

v.

MARYLAND SQUARE, LLC, et al.,

    Defendants.

_____

MARYLAND SQUARE, LLC, et al.,

    Third Party Plaintiffs,

v.

GENERAL GROWTH MANAGEMENT, INC., a foreign corporation, et al.

    Third Party Defendants.

_____

2:08-CV-1618-RCJ-GWF

**ORDER**

Currently before the Court is a Motion for Summary Judgment (#410) filed by Defendants/Counter-Crossclaimants Maryland Square Shopping Center, LLC, the Herman Kishner Trust dba Maryland Square Shopping Center and Irwin Kishner, Jerry Engel and Bank of America, as Trustees for The Herman Kishner Trust (collectively referred to herein as the "Kishner Defendants") on August 12, 2010. Defendants Melvin Shapiro ("Melvin Shapiro") and Shapiro Brothers Investment Co. ("SBIC")(collectively referred to herein as the "Shapiro Defendants") filed an Opposition (#451) on September 10, 2010, and the Kishner Defendants filed a Reply (#456) on September 14, 2010.[1]

---

[1] The Shapiro Defendants also filed a Motion to Strike (#452) on September 10, 2010. That motion is DENIED.

Oral argument was heard on the motion on September 16, 2010.

**BACKGROUND**

Plaintiffs, all of whom are residential homeowners, filed a Complaint in this action under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), seeking injunctive relief for contamination caused by the discharge of perchloreoethylene ("PCE") from an Al Phillips the Cleaners dry cleaning facility that was located in the Maryland Square Shopping Center ("Shopping Center") from 1969 until 2000.

On October 20, 2009, Plaintiffs filed a motion for summary judgment against the Kishner Defendants and Maryland Square, LLC ("MSLLC"). The Kishner Defendants and MSLLC are all former owners of the Shopping Center. On July 22, 2010, the Court granted Plaintiffs' motion finding that the Kishner Defendants and MSLLC were liable under RCRA and agreed to enter an injunction to remediate the site. (Order (#390)). Plaintiffs did not move for summary judgment against the Shapiro Defendants at that time. The Shapiro Defendants were the alleged owners of the actual dry cleaning facility located at the Shopping Center.[2] On August 12, 2010, Plaintiffs filed a Stipulation of Voluntary Dismissal (#409) with the Shapiro Defendants. As such, Plaintiffs have agreed to dismiss their claims against the Shapiro Defendants.

On the same day the dismissal stipulation was filed, the Kishner Defendants filed a Motion for Summary Judgment (#410) against the Shapiro Defendants based on the counter-crossclaims the Kishner Defendants filed on February 3, 2010.[3] According to the Kishner Defendants, they are entitled to summary judgment on their counter-crossclaims because the Shapiro Defendants are the parties responsible for the PCE contamination at the Shopping Center. (Mot. for Summary Judgment (#410) at 2).

---

[2] In regards to the ownership of the dry cleaning facility and the lease agreements entered into between the owners of the Shopping Center and the dry cleaning facility, the Shapiro Defendants argue that SBIC and Melvin Shapiro are distinct and separate entities. (Opp. (#451) at 9).

[3] The Kishner Defendants assert the following claims for relief against the Shapiro Defendants: (1) express indemnity; (2) implied indemnity; (3) contribution; and (4) breach of guaranty. (Answer and Cross-Claims/Counter Cross-Claims (#222)).

## DISCUSSION

### A. Legal Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. Bagdadi v. Nazari, 84 F.3d 1194, 1197 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. Id. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. Id. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. Id.

### B. Jurisdiction Pending Appeal

Before addressing the merits of the summary judgment motion, the Court must first determine if it has jurisdiction to decide this motion following the Kishner Defendants' appeal of the Court's Order (#390) granting Plaintiffs' motion for summary judgment. The

1  Shapiro Defendants argue that pursuant to 28 U.S.C. § 1292 this Court is divested of
2  jurisdiction to proceed on this motion.  (Opp. (#451) at 5).
3         The Kishner Defendants filed a Notice of Appeal (#421) in this action following the
4  Court's Order (#390) granting Plaintiffs' motion for summary judgment.  28 U.S.C. §
5  1292(a)(1) provides that the court of appeals shall have jurisdiction of appeals from
6  "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or
7  dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct
8  review may be had in the Supreme Court."  28 U.S.C. § 1292(a)(1).  "When a notice of
9  appeal is filed, jurisdiction over the matters being appealed normally transfers from the
10 district court to the appeals court."  Mayweathers v. Newland, 258 F.3d 930, 935 (9th Cir.
11 2001); see Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 379, 105
12 S.Ct. 1327, 84 L.Ed.2d 274 (1985)("In general, filing of a notice of appeal confers
13 jurisdiction on the court of appeals and divests the district court of control over those
14 aspects of the case involved in the appeal.").  An exception to this rule exists under the
15 Federal Rules of Civil Procedure, which allows the district court "to retain jurisdiction to
16 'suspend, modify, restore, or grant an injunction during the pendency of the appeal . . . as it
17 considers proper for the security of the rights of the adverse party.'"  Mayweathers, 258
18 F.3d at 935 (quoting Fed. R. Civ. P. 62(c)).  Thus, "the district court retains jurisdiction
19 during the pendency of the appeal to act to preserve the status quo," but lacks jurisdiction
20 "to adjudicate anew the merits of the case."  Mayweathers, 258 F.3d at 935 (internal
21 quotations and citations omitted).  The district court's exercise of jurisdiction should not
22 "materially alter the status of the case on appeal."  Id.
23         In this matter, the Court is not divested of jurisdiction to determine this motion
24 because the motion seeks summary judgment on the Kishner Defendants' indemnity and
25 contribution counter-crossclaims and not liability under RCRA.  On the other hand, the
26 appeal in this matter, as the parties are aware, relates solely to the Kishner Defendants'
27 liability under RCRA. Thus, the causes of action the Kishner Defendants are seeking
28 summary judgment on are not directly related to the appeal in this matter.  The Shapiro

4

Defendants themselves note that the counter-crossclaims asserted against them are all based on state law theories of indemnity and contribution.  The Kishner Defendants have not asserted any RCRA claims against the Shapiro Defendants.  Based on the claims for relief at issue in this motion, a determination on these issues will not materially alter the status of the case on appeal and this Court retains jurisdiction to determine the motion.

**C. Contractual Indemnity**

The Kishner Defendants first move for summary judgment on their contractual indemnity claims against the Shapiro Defendants.  According to the Kishner Defendants, the Shapiro Defendants are liable for contractual indemnity based on two lease agreements entered into between the parties.  (Mot. for Summary Judgment (#410) at 8). The Kishner Defendants state that provisions of the lease agreements "specifically require the Shapiro Defendants to indemnify the [Kishner] Defendants." Id.  Because the Shapiro Defendants "contractually agreed to indemnify the [Kishner] Defendants from any and all claims or costs arising from their operations" at the Shopping Center, the Kishner Defendants state that summary judgment is appropriate and the Shapiro Defendants are required to indemnify the Kishner Defendants for the costs they have incurred as a result of PCE contamination at the site.

In response, the Shapiro Defendants state that the Kishner Defendants have failed to carry their burden of demonstrating that they are entitled to judgment as a matter of law on their claims against the Shapiro Defendants.  (Opp. (#451) at 2).  In this regard, the Shapiro Defendants state that the Kishner Defendants' motion is "filled with factual misstatements." Id. at 7.  The Shapiro Defendants note that the Kishner Defendants repeatedly refer to SBIC and Melvin Shapiro as one entity, even though they are legally distinct.  As an example, the Shapiro Defendants assert that the motion states that the "Shapiro Defendants" entered into lease agreements with the Kishner Defendants; however, the Shapiro Defendants argue that Melvin Shapiro was not a party to those agreements. Id.  Given these alleged misstatements, the Shapiro Defendants argue that "it can hardly be said that the [Kishner] Defendants fulfilled their burden of demonstrating the

absence of a genuine issue as to any material fact."[4]  Id. at 11.  Substantively, the Shapiro Defendants argue that the Kishner Defendants are not entitled to summary judgment on their contractual indemnity claim on the grounds that the Kishner Defendants have failed to provide evidence that the injury or damage occurred "during the demised term" of the lease agreement or on the "demised premises."  Id. at 12.  In addition, the Shapiro Defendants argue that Melvin Shapiro, as an individual, cannot be liable for the contractual indemnity because he was not personally a party to the lease.  Id.

"Contractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work."  George L. Brown Ins. v. Star Ins. Co., ___ Nev. ___, 237 P.3d 92, 96 (Nev. 2010)(quoting Medallion Dev. v. Converse Consultants, 113 Nev. 27, 33, 930 P.2d 115, (Nev. 1997), *superseded by statute as stated in* Doctors Co. v. Vincent, 120 Nev. 644, 654, 98 P.3d 681 (Nev. 2004).  The scope of a contractual indemnity clause is determined by the contract and is generally interpreted like any contract.  George L. Brown Ins., 237 P.3d at 97(citing Rossmoor Sanitiation, Inc. v. Pylon, Inc., 532 P.2d 97, 104 (Cal. 1975)).

The contractual indemnity clauses at issue in this case arise from two lease agreements: (1) the 1968 lease entered into between Herman Kishner dba Maryland Square Shopping Center as the lessor and Al Phillips the Cleaners, Inc. as the lessee; and (2) the 1982 lease entered into between Irwin Kishner, Jerry Engel and Valley Bank of Nevada, Trustees of the Herman Kishner Trust as the lessor and SBIC as the lessee.[5]  The

---

[4] The Court agrees that for purposes of determining liability under the lease agreements, Melvin Shapiro and SBIC should be treated as distinct legal entities.  However, the Court does not find that the Maryland Square Defendants' referral to these entities together as the "Shapiro Defendants" throughout the motion is sufficient to deny the Kishner Defendants summary judgment on the grounds that such a referral raises a question of material fact.

[5] The lessee in the 1968 lease, Al Phillips the Cleaners, Inc., was a corporation formed by Melvin Shapiro and Philip Shapiro on October 15, 1967.  (See Third Party Claim of Shapiro Bros. Investment Corp. filed in CV-S002-1218-LDG-RJJ and attached as Ex. 6 to the Reply (#456)).  In 1971, Al Phillips the Cleaners, Inc. was dissolved and the lease was transferred to a second Al Phillips the Cleaners, Inc..  The officers and directors of the second Al Phillips the Cleaners, Inc. were Melvin Shapiro and Philip Shapiro.  Id.  Between 1971 and 1972, SBIC was formed under the laws of the State of Nevada and in 1978 the lease was transferred from the second Al Phillips the Cleaners, Inc. to SBIC.  Id.

1968 indemnity clause provides, in pertinent part:

> Lessee agrees to indemnify and save harmless Lessor from and against all claims arising from any act, omission, or negligence of lessee, or its contractors, licensees, agents, servants, or employees or arising from any accident, injury or damage whatsoever caused to any person, or to the property of any person during the demised term, in or about the demised premises, the sidewalks, if any, adjoining the same and any loading dock used exclusively by lessee and will indemnify and hold harmless Lessor from and against all costs, expenses and liabilities incurred in or in connection with any such claim or proceeding brought thereon . . . . Lessee agrees to use and occupy the demised premises at its own risk and hereby releases to the full extent permitted by law, the Lessor, its agents, servants, contractors and employees from all claims and demands of every kind resulting from any accident damage or injury occurring therein.

(See 1968 Lease Agreement attached as Ex. 2 to Mot. for Summary Judgment (#410) at 13). The 1982 indemnification clause provides, in pertinent part:

> Tenant hereby covenants to indemnify, save and hold Landlord and the leased property free, clear and harmless from each liability, loss, cost, charge, penalty, obligation, expense, attorney's fee, litigation, judgment, damage, claim or demand of any kind whatsoever in connection with, arising out of, or by reason of any violation of law, ordinance or regulation by Tenant or of any independent contractor, agent, or employee of Tenant while in, upon, about or in any way connected with the leased property or any portion thereof during the term of this Lease.

(See 1982 Lease Agreement attached as Ex. 3 to Mot. for Summary Judgment (#410) at 12).

The Kishner Defendants argue that the foregoing lease provisions require the Shapiro Defendants to indemnify the Kishner Defendants for the harm they have suffered as a result of the PCE contamination at the Shopping Center. According to the Kishner Defendants, they are being held vicariously liable for the misconduct of the Shapiro Defendants and the PCE contamination that occurred while the Shapiro Defendants operated a dry cleaning facility at the Shopping Center.[6] Based on the foregoing provisions, the Kishner Defendants argue that they are entitled to summary judgment on their claims of contractual indemnity.

In response, the Shapiro Defendants argue that Melvin Shapiro was not a party to

---

[6] The Kishner Defendants state that during discovery the Shapiro Defendants admitted to using PCE during the operations of their dry cleaning business and admitted spilling PCE on the concrete floors of the leased premises. (Mot. for Summary Judgment (#410) at 5, citing Ex. 1, 2, 3 and 5).

7

either the 1968 lease or the 1982 lease.[7]  (Opp. (#451) at 7).  Thus, the Shapiro Defendants state that Melvin Shapiro cannot be liable under the indemnification clauses of the lease agreements.  The Shapiro Defendants also argue that SBIC is not liable under the foregoing clauses based on the specific indemnification language contained therein.  Id. at 12.  Finally, the Shapiro Defendants argue that the Kishner Defendants have failed to present evidence of any particular act or omission occurring during the lease terms upon which their claim for indemnity may be based.

**1. Melvin Shapiro**

As noted by the Shapiro Defendants, Melvin Shapiro was not a party to either the 1968 or 1982 lease agreements.  Although Melvin Shapiro was a signatory on both agreements, he signed them in his role as an officer of the corporate lessee.  (#410-2 at 36 and #410-3 at 42).

Under both state and federal law a corporation is a distinct legal entity separate and apart from its officers, directors, and shareholders.  See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001); see also Ex parte Rickey, 31 Nev. 82, 100 P. 134 (Nev. 1909)(stating that a corporation is an artificial person, a distinct legal entity, and its officers are its agents).  In Nevada, a secretary or other officer of a private corporation "is not personally liable for the debts and liabilities of the corporations solely by reason of his occupancy of the office."  Berman v. Riverside Casino Corp., 247 F.Supp. 243, 245 (Nev. 1964).

In this case, because Melvin Shapiro was not a party to the lease agreements and only signed those agreements in his capacity as an officer of the corporation, the Kishner Defendants are not entitled to summary judgment on their contractual indemnity claim asserted against him.  Under Nevada law, Melvin Shapiro is not liable for the debts and

---

[7] As noted in the foregoing, the Shapiro Defendants argue that Melvin Shapiro and SBIC are separate and distinct entities.  (Opp. (#451) at 9).  The Shapiro Defendants state that the Kishner Defendants' intermingling of these two entities for purposes of their motion for summary judgment is either "an act of repeated carelessness" by the Kishner Defendants or "an attempt to mislead the Court."  Id.

liabilities of SBIC - which was the corporate lessee under the pertinent lease agreements.

### 2. SBIC

Although Melvin Shapiro is not liable as an individual under the indemnification clauses of the lease agreements, the Court finds that the Kishner Defendants are entitled to summary judgment on their contractual indemnity claim against SBIC.

SBIC was the actual party to the lease agreements at issue in this case.[8]  In addition, SBIC was the corporate entity that owned and ran the dry cleaning facility at the Shopping Center until 1984.

SBIC argues that it is not liable under the indemnification clauses because the Kishner Defendants have not provided any evidence that the PCE contamination occurred on the leased premises during either the term of the 1968 lease or 1982 lease.  The Court finds this argument without merit.  As noted in the Order (#390) granting Plaintiffs' motion for summary judgment on their RCRA cause of action against the Kishner Defendants and MSLLC, the Court found that there was sufficient evidence to conclude that the PCE plume at issue in this case stemmed from the operation of the dry cleaning facility at the Shopping Center.  SBIC was the owner and operator of that dry cleaning facility until 1984.  In addition, the Kishner Defendants have provided evidence that PCE spills occurred at the dry cleaning facility during SBIC's lease terms. (See Defendant SBIC's First Amended Response to Plaintiff's Specially Prepared Interrogatories, attached as Ex. 5 to Mot. for Summary Judgment (#410) at 9).  Specifically, SBIC stated that it had been informed "that occasionally a button trap would clog and amounts of PCE would spill onto the concrete floor."  Id.  SBIC stated that it had "also been informed that there may have been a time when a filter change resulted in the spill of some PCE onto the concrete floor."  Id.  Moreover, during the underlying RCRA cause of action, the Court noted that the drain pipes beneath the dry cleaning facility contained the highest concentrations of PCE.  Thus,

---

[8] SBIC was the actual party to the 1982 lease agreement and the 1968 lease agreement was transferred to SBIC in 1978.  See Third Party Claim of Shapiro Bros. Investment Corp. filed in CV-S002-1218-LDG-RJJ and attached as Ex. 6 to the Reply (#456).

based on the foregoing, the Court finds that there is sufficient evidence, on summary judgment, to hold SBIC liable for PCE contamination at the site for purposes of contractual indemnity as to the Kishner Defendants.

In addition to the foregoing, the Shapiro Defendants argue that the terms of the 1982 lease agreement superseded and cancelled the indemnification provision of the 1968 lease. Specifically, the Shapiro Defendants argue that the following language nullifies the indemnity provision of the 1968 lease: "[U]pon commencement of the lease term hereunder, said prior lease, addendum, and any rights and obligations of the respective parties arising out of the same shall be deemed terminated as if said lease as amended had expired by its term, i.e. lapse of time . . . ." (Opp. (#451) at 13).

As noted in the foregoing, the scope of a contractual indemnity clause is determined by the contract and is generally interpreted like any contract. George L. Brown Ins., 237 P.3d at 96. Here, the 1982 lease does not cancel the indemnification provision of the 1968 lease for acts and omissions which occurred during the term of the 1968 lease. Moreover, based on the prior findings of the Court that the PCE contamination was caused by the dry cleaning facility at the Shopping Center and that the Shapiro Defendants admit spills of PCE during their tenancy, the Court finds that summary judgment is warranted on the Kishner Defendants' contractual indemnity claim against SBIC.

Although summary judgment is warranted, SBIC argues that under NRS 78.585, the Kishner Defendants' claim is barred by the statute of limitations.

NRS 78.585 provides for the continuation of a corporation after dissolution for purposes of winding up, and also the limitation on actions by or against a dissolved corporation. Under that statute: "The dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or shareholders arising before its dissolution and commenced within 2 years after the date of the dissolution." NRS 78.585. In Beazer Homes Nevada, Inc. v. Eighth Judicial Dist. Court, the Nevada Supreme Court addressed the language of this statute and its application to claims brought post-dissolution. 120 Nev. 575, 97 P.3d 1132 (Nev. 2004). In that case,

the court held that NRS 78.585 was ambiguous and subject to differing interpretations. After turning to the legislative intent, the court held that "the Legislature did not intend to bar post-dissolution claims by adopting NRS 78.585." Id. at 584, 97 P.3d at 1138. According to that court, the purpose of the statute was to provide a fair and equitable method of finalizing corporate affairs. Id. The court held that this purpose "is not served by barring claims that arise after the dissolution." Id. "A more reasonable construction is that the Legislature intended NRS 78.585 to apply only to pre-dissolution claims and that the finality of post-dissolution claims would be determined by the statutes of repose or limitation applicable to the post-dissolution cause of action." Id. Moreover, that court held that the statute should be interpreted consistently with its use in the statute-of-limitations context "and that therefore a claim does not arise until a litigant discovers, or reasonably should have discovered, the facts upon which a claim is based." Id. at 587, 97 P.3d at 1139.

Thus, based on the Nevada Supreme Court's interpretation of NRS 78.585, the Court finds that the Kishner Defendants' claim is not untimely.

**D. Equitable Indemnity**

The Kishner Defendants also move for summary judgment on their equitable indemnity claim against the Shapiro Defendants. Because the Court finds that the Kishner Defendants are entitled to contractual indemnity from SBIC, it will not address the Kishner Defendants' motion for equitable indemnity as to SBIC. However, the Court will determine whether the Kishner Defendants are entitled to equitable indemnity from Melvin Shapiro.

In this case, the Kishner Defendants argue that the Shapiro Defendants are liable for equitable indemnity on the ground that they "owned and operated the only dry cleaning facility at the Maryland Square Shopping Center" from 1968 to 1984.[9] (Mot. for Summary Judgment (#410) at 9). Based on this, the Kishner Defendants argue that it would be inequitable to allow the Shapiro Defendants to avoid liability for the contamination of the

---

[9] In their motion, the Kishner Defendants do not distinguish between Melvin Shapiro and SBIC for purposes of establishing equitable indemnity.

11

site.

In response, the Shapiro Defendants argue that the Kishner Defendants are not entitled to equitable indemnity because the Kishner Defendants fail "to present any evidence that the Shapiro Defendants improperly handled or disposed of PCE, or that their handling of PCE caused or contributed to the contamination alleged in this action." (Opp. (#451) at 17).

Under Nevada law, "[n]oncontractual or implied indemnity is an equitable remedy that allows a defendant to seek recovery from other potential tortfeasors whose negligence primarily caused the injured party's harm." Rodriguez v. Primadonna Co., LLC, ___ Nev. ___, 216 P.3d 793, 801 (Nev. 2009). "At the heart of the doctrine is the premise that the person seeking to assert implied indemnity - the indemnitee - has been required to pay damages caused by a third party - the indemnitor." Id. (quoting Harvest Capital v. WV Dept. of Energy, 560 S.E.2d 509, 513 (W.Va. 2002)). "Implied indemnity has been developed by the courts to address the unfairness which results when one party, who has committed no independent wrong, is held liable for the loss of a plaintiff caused by another party." Id.

Generally, the remedy of equitable indemnity is available after the defendant has extinguished its own liability through settlement or by paying a judgment. Id. The Nevada Supreme Court holds that "a cause of action for indemnity . . . accrues when payment has been made." Id. (quoting Aetna Casualty & Surety v. Aztec Plumbing, 106 Nev. 474, 476, 796 P.2d 227, 229 (1990)). A claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter. Id.

In this matter, the Court cannot conclude, as a matter of law, that Melvin Shapiro is liable to the Kishner Defendants for equitable indemnity. In this regard, the Kishner Defendants have not asserted sufficient facts against Melvin Shapiro individually, on which to base their equitable indemnity claim. As noted in the foregoing, Melvin Shapiro is a

12

separate and distinct entity from SBIC, and there is no allegation that Melvin Shapiro was the individual owner of the dry cleaning facility at issue in this matter.  In addition, Melvin Shapiro filed a declaration stating that he was not a party to the lease agreements discussed in the foregoing and only signed those agreements in his capacity as an officer of SBIC.  (See Declaration of Melvin Shapiro at 2-3, attached as Ex. 2 to Opp. to Motion for Summary Judgment (#451)).  Moreover, Melvin Shapiro stated that from 1968 through 1984, he "did not, at any time, manage, direct, or conduct operations at the dry cleaning facility at the Maryland Square Shopping Center having to do with the leakage or disposal of hazardous waste, or with decisions about compliance with environmental regulations." Id. at 4.  Instead, Melvin Shapiro states that he "was primarily involved with the marketing and customer service aspects of that dry cleaning business or in the hiring and training of its cleaning personnel." Id.

Based on the foregoing, there is an issue of fact regarding whether Melvin Shapiro is liable to the Kishner Defendants for equitable indemnity.[10]  As such, summary judgment is not appropriate at this time.

**F. Guaranty**

Finally, the Kishner Defendants move for summary judgment against Melvin Shapiro on their contractual indemnification claim on the grounds that Melvin Shapiro signed a personal guarantee of the lease agreements when the lease was assigned in 1984.  (Mot. for Summary Judgment (#410) at 12).  According to the Shapiro Defendants, this guarantee included the obligations for handling PCE, complying with all local rules and regulations, as well as the indemnity provisions. Id.  In response, the Shapiro Defendants argue that the guaranty signed by Melvin Shapiro did not cover the lease obligations of SBIC, but rather, the performance by the Assignee of the lease, which was Al Phillips The Cleaner, Inc. - a Nevada corporation formed by Johnson Group, Inc. in 1984.  (Opp. (#451)

---

[10] The same analysis applies to the Kishner Defendants' claim for contribution.  Based on the facts currently before the Court, the Court cannot find, as a matter of law, that Melvin Shapiro is liable for contribution.

at 25). According to the Shapiro Defendants, the Kishner Defendants have not asserted a breach of the lease agreement by Al Phillips the Cleaners, Inc. in this action upon which to base their guaranty claim. Id. In addition, the Shapiro Defendants argue that the claim is untimely because it was not brought within six years from the date of the alleged breach. Id. at 26.

"[G]eneral contract interpretation principles apply to interpret guaranty agreements." Dobron v. Bunch, 125 Nev. 36, 37, 215 P.3d 35 (Nev. 2009)(eliminating "the construction rule that a guaranty agreement by strictly construed in any party's favor"). The guaranty at issue in this case provides:

> The undersigned, jointly and severally, unconditionally guarantees performance by Assignee of each and every one of the obligations of tenant under the lease herein assigned including, but not limited to the payment of all rent when and as the same shall become due; and such guarantee shall apply with or without prior demand or notice upon Guarantor.

(See Assignment of Lease at 3, attached as Ex. 4 to Mot. for Summary Judgment (#410)). Melvin Shapiro signed the guaranty in his personal capacity.

In this matter, the Court finds that summary judgment on this issue is appropriate for the contamination that occurred at the site during the term of the assignment. The guaranty signed by Melvin Shapiro relates to the performance "by Assignee" of the lease obligations. The assignee under that agreement was Al Phillips The Cleaner, Inc., a corporation formed by Johnson Group, Inc. in 1984. There is no dispute that Melvin Shapiro signed an agreement guarantying performance by the assignee of the lease "of each and every one of the obligations of tenant under the lease." There is also no dispute that contamination from PCE occurred at the site of the dry cleaning facility. Such contamination was a violation of the lease agreement. Because the lease agreement was violated, Melvin Shapiro had a duty, under the indemnity provision of the 1982 lease, to indemnify the Kishner Defendants for the costs arising out of the contamination. Although the Kishner Defendants have not provided evidence of a specific act or omission that led to the contamination, the Court finds it sufficient that the dry cleaning facility used PCE in its operations, and that experts have opined that the dry cleaning facility at the Maryland

Square Shopping Center is responsible for the PCE plume at issue in this matter.

**CONCLUSION**

For the foregoing reasons, it is ORDERED that the Kishner Defendants' Motion for Summary Judgment (#410) is GRANTED.

DATED: This 19th day of October, 2010.

_____
United States District Judge