# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| PETER J. VOGGENTHALER, *et al.*, | ) |
| Plaintiffs, | ) Case No. 2:08-cv-01618-RCJ-GWF |
| vs. | ) **ORDER** |
| MARYLAND SQUARE, LLC., *et al.*, | ) **Motion to Compel Compliance with Subpoena (#476)** |
| Defendants | ) |

This matter is before the Court on the Motion to Compel Compliance with Subpoena (#476), filed on October 5, 2010 by Defendants/Third Party Defendants Maryland Square Shopping Center, LLC, the Herman Kishner Trust dba Maryland Square Shopping Center and Irwin Kishner, Jerry Engle and Bank of America, as Trustees for the Herman Kishner Trust (hereinafter the "Kishner Defendants"). Third Party Defendant Boulevard Mall, LLC filed its Opposition to Defendants' Motion to Compel Compliance with Subpoena (#521) on November 12, 2010. Third Party Defendant Sears Roebuck & Co. (hereinafter "Sears") filed its Opposition to Defendants' Motion to Compel Compliance with Subpoena (#522) on November 12, 2010 and an Errata to its Opposition (#523) on November 15, 2010. The Kishner Defendants filed their Replies to the Boulevard Mall, LLC's and Sears' Oppositions (#548 and #549) on November 29, 2010. Third Party Defendant Boulevard Mall, LLC filed a Surreply to the Kishner Defendants' Reply (#572) on December 3, 2010. Third Party Defendant Sears filed a Surreply to the Kishner Defendants' Reply (#581) on December 10, 2010. The Court conducted a hearing in this matter on December 20, 2010.

## BACKGROUND

The Complaint in Case No. 2:08-cv-01618-RCJ-GWF was filed on November 19, 2008. The Plaintiffs in this action are residential homeowners. Plaintiffs' claims arise out of a ground

water contamination allegedly caused by the discharge of perchloreoethylene ("PCE") from an Al Philips the Cleaner dry cleaning facility (hereinafter "Al Philips facility") which was located in the Maryland Square Shopping Center from 1969 until 2000. The Kishner Defendants[1] are owners of the Maryland Square Shopping Center, and the "Shapiro Defendants" are former owners of the Al Philips facility. The State of Nevada, Division of Environmental Protection ("NDEP") filed a related action, Case No. 3:09-cv-00231-RCJ-GWF (the "NDEP action"), against the same Defendants on May 4, 2009. These actions were consolidated on July 22, 2010.

The Maryland Square Shopping Center property is located on the west side of Maryland Parkway, a major north-south street in the south-central portion of the Las Vegas valley. The Boulevard Mall property is located on the east side of Maryland Parkway. The terms "Boulevard Mall property" or "mall property" are used to describe the entire commercial mall property located along the east side of Maryland Parkway from Desert Inn Road on the north to Katie Avenue on the south. Plaintiffs' homes are in a residential neighborhood located on the east side of the Boulevard Mall property. Third Party Defendant Sears owns the northern third of the Boulevard Mall property which includes the Sears department store building. A Sears auto service center was previously located just north of the Sears department store. That auto service center was demolished and replaced by another auto service center located further north of the original location. The parking areas on the north, west and east sides of the Sears buildings are also owned by Sears. The southern two thirds of the Boulevard Mall property are owned by Third Party Defendant Boulevard Mall, LLC or other entities. The Maryland Square Shopping Center is directly west of the south-central section of the Boulevard Mall property as it runs north to south, and is several hundred feet south of the Sears property.

This lawsuit arose from an investigation that was overseen by the Nevada Division of Environmental Protection ("NDEP"). PCE is a solvent/degreaser commonly used in dry cleaning operations. The PCE discharge at the Al Philips facility was first reported on November 29, 2000,

---

[1] These Defendants have previously been referred to as the "Maryland Square Defendants." The Defendants refer to themselves as the "Kishner Defendants" in the instant motion and the Court will use that abbreviation in this Order.

although it may have begun at a much earlier time. In late 2002 it was determined that the PCE had migrated off site, forming a "plume" in the groundwater. The PCE plume emanating from the Al Philips facility, as delineated in previous studies, extends eastward or slightly northeastward across Maryland Parkway, beneath the mall property and into the residential neighborhood. The Court refers to this plume as the "Al Philips plume." It has also been referred to by others as the "Maryland Square plume" or the "MSSC plume."

Test results from monitoring wells on the Boulevard Mall property in 2003 and 2004 showed that the Al Philips plume had traveled due east beneath that property. A July 2005 report indicated that the plume had extended further east under the residential neighborhood. This was confirmed in 2006 by test results from monitoring wells installed in the residential neighborhood. In October 2006, NDEP directed DCI USA, Inc., the last owner of the Al Philips facility, to (1) conduct soil vapor sampling in the residential neighborhood, (2) prepare a detailed investigation and plan for removal of the contaminant at the dry cleaner site, (3) prepare a groundwater corrective action plan, and (4) perform further characterization of off-site groundwater contamination. A soil gas report was submitted to NDEP in April 2007. Computer simulations based on the data in that report indicated a potential for vapor intrusion into the homes in the area east of the Boulevard Mall property which could be above the EPA's health-protective levels for long-term exposure. After DCI filed bankruptcy in July 2008, NDEP notified the Kishner Defendants that it would seek recovery of its expenses from the parties determined to be responsible for the release of contaminants from the Al Philips facility. *See NDEP Complaint (#1)*, ¶ 22.

In November 2008, the Plaintiffs-homeowners filed their action under the Federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6972(a)(1)(B). After the initial discovery plan and scheduling order was filed, the parties agreed to postpone certain discovery while they engaged in settlement negotiations. According to the Kishner Defendants, "[i]n the fall of 2009, settlement negotiations broke off as the Maryland Square [Kishner] Defendants discovered evidence of other potentially responsible parties who could be contributing to the alleged PCE plume." *Motion to Extend Trial and Discovery Deadlines (#248)*, p. 8. On September 28, 2009,

the Defendants moved to extend discovery and continue the trial date. On November 11, 2009, the Court extended discovery to May 5, 2010 and the trial was continued to September 15, 2010.

While the Defendants' motion to extend discovery was still pending, the Plaintiffs filed a motion for summary judgment against the Kishner Defendants on October 20, 2009. Plaintiffs argued that there was no issue of fact that the PCE plume was caused by the discharge from the Al Philips facility and that Defendants were legally required to remediate the hazard caused by that discharge. In opposing the motion, the Kishner Defendants argued, in part, that there were other potential contributors to the PCE plume, including automobile repair facilities and gasoline service stations on or in the vicinity of the Boulevard Mall property. The Kishner Defendants also alleged that another dry cleaning business, Dr. Clean, which was located near the corner of Maryland Parkway and Desert Inn Road, discharged approximately 300 gallons of PCE into the groundwater in 1993. As discussed hereinafter, there is evidence that the "Dr. Clean plume" has migrated across the northern portion of mall property owned by Sears. The Kishner Defendants argued that it is also possible that the "Dr. Clean plume" has entered the residential neighborhood and is contributing to the PCE vapor intrusion into the residences. The Plaintiffs argued that summary judgment should still be granted against the Kishner Defendants because liability under the RCRA is joint and several. On January 22, 2010, the District Judge granted the Kishner Defendants additional time to obtain evidence to support their opposition to the motion for summary judgment.

On February 3, 2010, the Kishner Defendants filed a third party complaint in which they alleged that Third Party Defendants Boulevard Mall, LLC, Sears Roebuck & Co., Goodyear Tire & Rubber Co., Wiens Properties, LLC, Terrible Herbst, Inc. and Superior Tire, Inc. may have discharged PCE into the groundwater which contributed to the Al Philips plume. The Kishner Defendants also sued Dr. Clean Management, Inc., the owner of the Dr. Clean facility, and the suppliers of the dry cleaning equipment that was used in the operations at the Al Philips facility.[2]

. . .

---

[2] On February 26, 2010, the Shapiro Defendants moved for leave to file a third party complaint against the same parties which was granted on July 22, 2010.

On February 25, 2010, the Kishner Defendants again moved to extend discovery and continue the trial. Defendants argued that the owners of the Boulevard Mall property had denied them access to perform additional testing which might reveal other sources for the PCE plume. They also asserted that NDEP had been unwilling to assist them in obtaining access to perform such testing. The Plaintiffs opposed any further extensions and argued that the Defendants had not acted diligently in pursuing discovery regarding third party contributors. The Plaintiffs also argued that the third party claims should be bifurcated so that their claims against the Kishner Defendants and Shapiro Defendants would not be further delayed. On April 14, 2010, the Court denied the Plaintiffs' request to bifurcate the third party claims and granted a further extension of discovery due to the recently filed third party complaint.

On July 22, 2010, the District Judge granted the Plaintiffs' motion for summary judgment against the Kishner Defendants on the issue of liability. The order stated that further hearing(s) would be conducted to determine the precise terms of the injunctive relief.

On July 22, 2010, the District Judge also granted Third Party Defendant Sears' motion to dismiss the Kishner Defendants' third party complaint. The Court dismissed the first cause of action under CERCLA, 42 U.S.C. § 9607(a), because the allegations against Sears were speculative in nature.[3] The Court stated that "[a]ll that can be derived, is that the [Kishner] Defendants have incurred response costs relating to the ground water plume, and that Sears and other collective third party defendants 'may' have used and/or spilled solvents and other chemicals at another location. Because the Third Party Complaint uses the terms 'may' and 'may have,' the allegations are not sufficient to raise the right to relief above the speculative level as required to survive a motion to dismiss." *Order (#391)*, page 9:8-13. The Court, however, gave the Kishner Defendants leave to file an amended third party complaint which "should include not only the elements necessary to bring a cause of action under Section 9607(a), but also sufficient factual content to raise the right to relief above the speculative level." *Id.*, page 9:19-21. The Court also dismissed the second cause of action under 42 U.S.C. § 9613(f), but again granted the Kishner Defendants leave to amend that

---

[3] The Court orally informed the parties of this decision during the hearing on July 6, 2010.

5

claim. The Court dismissed the third cause of action for equitable indemnity without leave to amend.

The Kishner Defendants filed their amended third party complaint on September 3, 2010. Sears also moved for dismissal of the amended third party complaint–this time on the grounds that it merely replaces speculative allegations with conclusory allegations that are devoid of factual content to support them. Underpinning Sears' second motion to dismiss is the contention that the Kishner Defendants have no evidentiary basis to support their claim that Sears or the other third party defendants contributed to the Al Philips plume.

On December 27, 2010, the District Judge entered the *Permanent Injunction Governing The Clean Up Of Hazardous Substances At And Emanating From Maryland Square Shopping Center (#592)*. Pursuant to this injunction, the Kishner Defendants and the Shapiro Defendants are required to undertake corrective actions to remediate the PCE and other hazardous substances as defined in Section II D. of the injunction. The injunction defines the "Site" which must be remediated as the "Property." The "Property" is, in turn, defined as "the property and location of the former Al Philips the Cleaner dry cleaning business [and] any area or media where Hazardous Substances released at or from the Property has come to be located, including any area where Hazardous Substances released at or from the Property have commingled with Hazardous Substances from other sites." *Id.* Section II J and L.

The Court now turns to the Kishner Defendants' instant Motion to Compel Compliance with Subpoena (#476). In early March 2010, the Kishner Defendants' former attorney Jason Gerber began discussions with Boulevard Mall, LLC's attorney Jeffrey Diver regarding access to the Boulevard Mall property for purposes of testing. These discussions began with a meeting but thereafter primarily took place through email exchanges. *Motion to Compel (#476), Exhibit 4), email communications*. Mr. Diver inquired about the type of testing that the Kishner Defendants wanted to conduct so that arrangements could be made and he could obtain permission for entry from the other owners of the Boulevard Mall property, Sears, Dillard's and Macy's. *Id, Attorney Diver's March 12, 2010 email*. On April 15, 2010, Mr. Gerber advised Mr. Diver that the Kishner Defendants desired to perform soil gas testing which would involve the drilling of core holes, 3

inches in diameter and 18 inches deep, at approximately 100 locations across the property. Soil gas measuring devices would be placed in the holes for a few days during which time the holes would be temporarily covered. The measuring devices would then be removed, the holes would be permanently plugged and the asphalt patched. *Motion to Compel (#476), Exhibit "4"; Declaration of Robert Howe (Kishner Defendants' Expert)*, ¶6. This proposal led to a series of email exchanged between the attorneys regarding the scope of the testing and other conditions governing it. Mr. Diver again advised that he did not have authority to grant the Kishner Defendants access to the property owned by Sears, Dillard' or Macy's. He stated, however, that he would seek their permission once the Kishner Defendants and Boulevard Mall, LLC reached agreement on the testing.

The attorneys thereafter engaged in negotiations regarding the soil gas testing, including efforts to minimize the impact of the testing on mall tenants and customers, and to ensure that the parking lots would be repaired after the testing was completed. Boulevard Mall, LLC also demanded that the installing contractor be adequately insured and that the mall property owners be covered as additional insureds under its policy. The negotiations ultimately reached an impasse over the issue of insurance. Mr. Gerber stated in a July 13, 2010 email to Mr. Diver that after attempting to negotiate an agreement for four months, the Kishner Defendants now requested that he serve a subpoena to obtain access for the testing. Mr. Diver responded that Boulevard Mall, LLC was still willing to negotiate an agreement but did not concede that the Kishner Defendants were legally entitled to conduct the testing. He further stated that Boulevard Mall, LLC had been willing to allow the testing because it did "not believe there has been any historical contribution to the perc plume from any operation on our portion of the Mall property, and, so, we wanted to give you every opportunity to convince yourselves of the truth of our belief." *Motion to Compel (#476), Exhibit "4."*

On July 16, 2010, the Kishner Defendants served subpoenas duces tecum on Boulevard Mall, LLC, Sears and their respective counsel. *Motion to Compel (#476), Exhibit "5."* The subpoenas called for the inspection/testing to begin on August 9, 2010 and to continue for a reasonable time until completed. The exhibits to the subpoenas included a site map of the

Boulevard Mall Property and a description of the proposed "passive soil gas testing" prepared by Tetra Tech EM, Inc.

Boulevard Mall LLC objected to the subpoena on the procedural grounds that there was currently no pending third party complaint which was a precondition to conducting discovery under Rule 26(b)(1), that notice of the subpoenas had not been provided to NDEP and the Plaintiffs-homeowners, and that the subpoenas did not provide 30 days in which to object as is provided for by Fed.R.Civ.Pro. 34(b). *Motion to Compel (#476), Exhibit "6."* Boulevard Mall, LLC also objected that the subpoena was vague in describing the number and location of sampling stations and the expected duration of the testing. It also asserted that the proposed soil gas testing was irrelevant because (1) it was not limited to testing for PCE or its "daughter compounds" and (2) previously conducted studies showed that operations on the Boulevard Mall, LLC's portion of the mall property had not contributed PCE to the soils or groundwater. Finally, Boulevard Mall, LLC asserted that the subpoena did not provide adequate insurance protection. *Id. Exhibit "6."*

Sears also objected to the subpoena on the grounds that notice was not provided to the other parties, that discovery should not go forward until a new third party complaint was filed and the parties had engaged in a Rule 26(f) conference, and that the 30-day time period for responding to a request for inspection of premises under Rule 34 should apply. *Motion to Compel (#476), Exhibit "7."* Sears also objected on the grounds that there was no factual basis to believe that operations on its property contributed to the Al Philips plume.

The Kishner Defendants responded to Boulevard Mall LLC's and Sears' objections on August 4, 2010 and asserted that the subpoenas were proper on both procedural and substantive grounds. *Motion to Compel (#476), Exhibit "8."* The Kishner Defendants' counsel asked the Boulevard Mall, LLC's and Sears' counsel to advise as soon as possible regarding their availability to meet and confer in regard to the dispute. *Id.* There were apparently no further discussions between the parties concerning the subpoenas prior to the filing of the motion to compel on October 5, 2010.

. . .

. . .

## DISCUSSION

### 1. Procedural Issues Relating to the Subpoenas.

The procedure that the Kishner Defendants were required to follow in order to obtain entry onto the Boulevard Mall property was arguably complicated by the dismissal of their third party complaint at approximately the same time that an impasse occurred in their effort to negotiate an access agreement. Although the order dismissing the third party complaint was not filed until after the subpoenas were issued, the Court announced its decision during the hearing on July 6, 2010. The Kishner Defendants apparently decided to serve subpoenas duces tecum because Sears and Boulevard Mall, LLC were, at least temporarily, no longer parties in the action. If the Kishner Defendants had served requests for inspection under Rule 34(a)(2), Sears and Boulevard Mall, LLC would likely have objected on the grounds that they were no longer parties and not subject to Rule 34.

Under Rule 45(a), a party may serve a subpoena duces tecum commanding the person to whom it is directed to produce records or permit the inspection of premises. Some federal district courts hold that a Rule 45 subpoena may not be served on a party. *Hasbro v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1998). *See also Wirtz v. Local Union 69, etc.*, 37 F.R.D. 349, 351 (D. Nev. 1965). Other courts, however, hold that a subpoena may be served on another party so long as it is not used to circumvent Rule 34 or other discovery rules and orders. *Mortgage Information Services, Inc. v. Kitchens*, 210 F.R.D. 562, 566 (W.D.N.C. 2002). Regardless of which rule is adopted in this district, the Kishner Defendants were not prohibited from serving subpoenas on Sears and Boulevard Mall, LLC once the third party complaint was dismissed. Because the Kishner Defendants intended to file an amended third party complaint, however, the reasonable course of action would have been to give Sears and Boulevard Mall, LLC thirty (30) days in which to respond or object to the inspection as provided by Rule 34. The Kishner Defendants also failed to comply with the requirement of Rule 45(b)(1) that they give notice of the subpoena to the other parties.

These types of procedural issues or defects can, of course, be rectified by providing the required notice and granting additional time prior to moving to enforce the subpoenas. The

Kishner Defendants waited until after their amended third party complaint was filed, and nearly two and a half months after the subpoenas were served, before bringing the instant motion to compel. By that point, all parties had sufficient opportunity to object to the subpoenas and to obtain additional expert opinions as to whether or not the testing should be allowed. The Court will therefore look past the procedural defects that existed at the time the subpoenas were served and decide this motion on the substantive issues relating to relevancy and the burden of the proposed testing.[4]

### 2. Relevance and Burden of Proposed Testing.

The Third Party Defendants argue that the motion to compel should be denied because the soil gas testing proposed by the Kishner Defendants is irrelevant. Rule 26(b)(1) of the Federal Rules of Civil Procedure authorizes the parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Even after the 2000 amendment which narrowed the scope of discovery to matters relevant to a claim or defense, the rule still contemplates liberal discovery and relevancy is broadly construed. *U.S. E.E.O.C. v. Caesars Palace Entertainment, Inc.*, 237 F.R.D. 428, 431 (D. Nev. 2006). The court in *Phoenix Solutions, Inc. v. Wells Faro Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) states that "the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matters that could bear on any issue that is or may be raised on the case." 4 Wright, Miller & Marcus, *Federal Practice & Procedure*, §2008 (2010), page 134, n. 31, cites numerous other cases which state that discovery under the rule is liberally construed.

The parties engage in the well-worn debate as to whether the proposed soil gas testing is an impermissible "fishing expedition." In *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392

---

[4] The Court will also excuse the Kishner Defendants' failure to comply with the meet and confer required of Rule 37(a) or LR 26-7(b). *See Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166 (D. Nev. 1996). Given the lengthy negotiations for access that preceded the subpoenas and Sears and Boulevard Mall, LLC's substantive objections to the testing, requiring the parties to engage in a dispute resolution conference at this point would simply further delay resolution of this dispute.

(1947), the Supreme Court famously stated: "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." The cry of "fishing expedition," however, did not die-out as a result of *Hickman*. As recently as *Cuomo v. Clearing House Ass'n, LLC*, 129 S.Ct. 2710, 2719 (2009), the Supreme Court stated that "[j]udges are trusted to prevent 'fishing expeditions' or an undirected rummaging through bank books and records for evidence of some unknown wrongdoing." In *Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1072 (9th Cir. 2004), the Ninth Circuit stated that "[d]istrict courts need not condone the use of discovery to engage in 'fishing expedition[s]'" and in *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993), the Eighth Circuit stated that the broad construction of relevancy "should not be misapplied so as to allow fishing expeditions in discovery." *Hofer* further stated that "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* An opponent's characterization of a discovery request as a "fishing expedition" should not, however, prevent discovery of relevant and potentially admissible evidence in the possession, custody or control of the opposing parties. The requesting party is not required to demonstrate in advance that the sought-after information will ultimately prove his case or even that it will be admissible at trial. He is only required to make a threshold showing that the discovery is relevant and is calculated to lead to the discovery of admissible evidence.

The conclusion that proposed discovery is relevant, however, does not necessarily end the inquiry as to whether it should be allowed. The 2000 amendment to Rule 26(b) was intended to encourage courts to exercise greater scrutiny in deciding whether discovery should be limited or precluded under the factors set forth in subsection (b)(2)(C). These factors include a balancing determination as to whether the burden and expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues. *U.S. E.E.O.C. v. Caesars Palace Entertainment, Inc.*, 237 F.R.D. at 431-42.

In *Belcher v. Bassett Furniture Industries, Inc.,* 588 F.2d 904, 908 (4th Cir. 1978), the Fourth Circuit stated that "[s]ince entry upon a party's premises may entail greater burdens and

risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted." The court further stated that "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." In so stating, the court quoted 8 Wright & Miller, *Federal Practice & Procedure*, § 2040, at 286-287 (1970) that "the right to discovery is a qualified right that does not extend to making unnecessary and unwarranted excursions onto the property of another under the guise of supportable litigative needs." *Belcher*, 588 F.2d at 908, n. 12. District courts outside the Fourth Circuit have applied *Belcher's* balancing test. *See Micro Chemical, Inc. v. Lextron, Inc.*, 193 F.R.D. 667, 669 (D. Colo. 2000) and *Minnesota Mining & Manufacturing Co. v. Nippon Carbide Industries Co., Inc.*, 171 F.R.D. 246, 248 (D. Minn. 1997).

The soil gas testing proposed by the Kishner Defendants has at least some threshold relevancy. The Kishner Defendants and their experts allege that PCE was/is used as a degreaser in automotive service operations and that it is reasonably possible that PCE was discharged into the underlying soils and groundwater from the automotive service facilities located on or in the vicinity of the Boulevard Mall property. The Kishner Defendants further assert that PCE discharged from these facilities may have migrated into and contributed to the Al Philips plume. According to the Kishner Defendants' expert Robert Howe, the proposed soil gas testing would further delineate the boundaries of the Al Philips plume and areas of PCE concentration within the plume--thereby possibly disclosing other sources of PCE within the plume. Third Party Defendants Sears and Boulevard Mall, LLC do not dispute that automotive service operations used PCE. They contend, however, that there is no evidence that PCE was discharged from any automotive facilities on or in the vicinity of the Boulevard Mall property or, if such discharges did occur, that PCE from those discharges migrated into the Al Philips plume.

The Kishner Defendants also point to the discharge of 300 gallons of PCE from the Dr. Clean dry cleaning facility which was located on the west side of Maryland Parkway across from the northern end of the Sears property. According to a January 11, 2010 report by OGI Environmental Services, LLC ("OGI"), the discharge at the Dr. Clean facility was reported to NDEP in 1992. *See Emergency Motion to Extend Trial (#248)*, Exhibit "G", OGI Report.

Subsequent investigations identified a dissolved PCE plume in the groundwater that extends from the former Dr. Clean facility east-southeast across Maryland Parkway. In June 2009, another consultant, Leymaster, proposed to NDEP that five hydropunches be installed on the Sears mall property down-gradient from the Dr. Clean site to determinate the extent of the plume. Because of difficulty in obtaining an access agreement with Sears, however, NDEP requested that boreholes be drilled along Oneida Way, east of the Sears property. *OGI Report*, page 2. In December 2009 OGI drilled three boreholes on Oneida Way. Test results from one of the borings, B-2, revealed PCE above the laboratory reporting limit of 5 micrograms per liter. This borehole was converted to a permanent monitoring well designated as MW-9. PCE was detected at a concentration of 90 micrograms per liter in a groundwater sample collected from MW-9. *OGI Report*, page 4. OGI concluded that the Dr. Clean plume extends in an easterly direction to Oneida Way approximately 970 feet east-southeast of the former Dr. Clean building. Because the PCE concentration in MW-9 was considerably lower than the amount detected in the well closest the Dr. Clean facility, OGI suggested that MW-9 may be near the leading edge of the Dr. Clean plume.

Notwithstanding, OGI's opinion that the Dr. Clean facility was the source of the PCE found in MW-9, Mr. Howe stated in his declaration that the source of the PCE in MW-9 cannot be clearly established without soil gas testing on a grid across the Sears and Boulevard Mall properties and subsequent follow-up investigation. *Motion to Compel (#476), Exhibit "9", Howe Declaration*, ¶ 10. Mr. Howe asserts that the PCE found in that well may have been from PCE discharges at the former Sears automotive center. He states that reports regarding testing of excavated soils at the former Sears automotive center following the removal of waste oil tanks and underground storage tanks in 1993 "did not fully delineate the potential contributions to the PCE plume from the former Sears Automotive Center." *Id.*, ¶ 11. Mr. Howe also theorizes that the Dr. Clean plume extends substantially beyond Oneida Way in a southeasterly direction where it merges with the northeastern end of the Al Philips plume in the residential neighborhood. In support of this theory, Mr. Howe states that 3.3 micrograms of PCE was detected in MW-33, which is inside the residential neighborhood, but north of the previously delineated boundary of the Al Philips plume. Mr. Howe also states that PCE vapors were found in residences located north of the estimated boundary of the

Al Philips plume which also supports his theory that the Dr. Clean plume has extended into that area and is contributing to at least some of the PCE vapor intrusion. *Howe Declaration*, ¶¶ 3-4.

In response to Mr. Howe's declaration, Sears' expert Nicole Sweetland stated in her November 12, 2010 report that multiple experts have evaluated the source of the Al Philips plume and "[n]ot one expert or report includes any evidence suggesting that Sears contributed to the plume." *Third Party Defendant Sears' Errata to Opposition (#523) Sweetland Report*, page 3. Ms. Sweetland notes that the Kishner Defendants' previous expert, Converse Consultants, stated in 2009 that "'there is no other identifiable site that could explain PCE concentrations in groundwater in lieu of the Al Phillips the Cleaner site.'" The Converse expert also reported that TCE and PCE were not detected at the Sears Property in soil and groundwater samplings. Ms. Sweetland also states that Mr. Howe and other experts employed by his firm, Tetra Tech, did not include Sears as a potential PCE source in previous reports. *Id.*, pages 3-4. She states that Mr. Howe failed to note that PCE was not detected in several groundwater and soil samples collected in 1997 and 1998 from the vicinity of the underground gasoline storage tanks, gasoline pump islands and underground waste oil storage tanks at the former Sears automotive center.

Ms. Sweetland states that OGI's 2009 report indicates that the Dr. Clean plume lies north of the former Sears Automotive Center and that PCE detected in MW-9 is from the Dr. Clean discharge. *Id.*, pages 4-5. She states that there is no evidence that the Dr. Clean plume has migrated substantially to the southeast of MW-9 such that it now extends into the residential neighborhood or merges with the Al Philips plume. Ms. Sweetland also disputes Mr. Howe's assertion that MW-9 is down gradient from the former Sears automotive center. A satellite map of the area shows that MW-9 lines somewhat to the northeast of the former Sears automotive center. *See Kishner Defendants' Reply (#548), Mr. Howe's November 23, 2010 Report, Figure 7.* To the extent that drainage on the Sears property is toward the southeast as Mr. Howe suggests in regard to the Dr. Clean plume, then it appears unlikely that theoretical PCE discharges from the former Sears automotive center have traveled northeast to MW-9.

Ms. Sweetland also states that there is no evidence that PCE migrated south or southeasterly from the Sears property into the Al Philips plume. She states that the Al Philips plume distribution

is consistent with a single source cigar shaped plume, with the highest concentrations of PCE located along its center axis and the lower concentrations along its outer boundaries. The monitoring wells along the northern boundary of the Al Philips plume have low or non-detect concentrations of PCE. These wells are approximately 1200 feet south of the former Sears automotive center. Ms. Sweetland states that if another source of PCE was located north or northeast of the Al Philips plume, elevated PCE concentrations would be found in the northeastern wells, which is not the case. The very low and sporadic concentrations of PCE found in MW-33 "are easily explained by lateral movement and dispersion of PCE within the [Al Philips] Plume and are not indicative of the Dr. Clean PCE Plume merging with the [Al Philips] Plume." *Sweetland Report*, page 7.

Ms. Sweetland also rejects Mr. Howe's assertion that PCE vapors found in residences northeast of the estimated boundary of the Al Philips plume support the conclusion that the PCE vapors emanate from the Dr. Clean plume. She states that "PCE is most likely present in these homes due to the sequential processes of (1) offgassing of PCE from the Maryland Square [Al Philips] PCE Plume, (2) lateral diffusion in soil gas outward away from the area of the Maryland Square PCE Plume, and (3) vapor intrusion of PCE into the homes. In other words, the vapor plume that originated from offgassing of PCE from the Maryland Square PCE plume would be expected to be larger than the footprint of the plume due to diffusion in soil gas." *Sweetland Report*, page 9. Ms. Sweetland concludes by stating that the existing data is sufficient to characterize the Maryland Square/Al Philips PCE Plume and determine its source, i.e. the Al Philips facility. She argues that soil vapor sampling on the Sears mall property will not aid in either characterization or identification of the source. *Id.*, page 10.

Mr. Howe submitted a rebuttal report to Ms. Sweetland's report in which, among other things, he takes issue with her opinion that PCE vapors would extend laterally outside the boundaries of an underlying groundwater plume. *Kishner Defendants' Reply (#548), Mr. Howe's November 23, 2010 Report*. Ms. Sweetland, in turn, submitted a report in response to Mr. Howe's rebuttal report in which she reasserts her opinion that soil gasses do, in fact, travel laterally and that the PCE vapor intrusion found in residences and wells in the residential neighborhood are from the

Al Philips plume. *Sears' Sur-Reply (#581), Exhibit "B" Sweetland's December 9, 2010 Report.*

Similar to the situation involving the former Sears automotive center, there is no evidence of specific discharges of PCE from automotive service facilities or other businesses located in the vicinity of the Al Philips plume--other than the Al Philips facility. Mr. Howe's assertion that PCE discharges may have occurred at the former Goodyear and Firestone facilities is, again, based on the general proposition that these facilities probably used PCE in their operations and, therefore could have discharged PCE which may have found its way into the Al Philips plume. Unlike the Dr. Clean plume, the boundaries of the Al Philips PCE plume have been substantially delineated through monitoring wells placed on the Boulevard Mall property and in the residential neighborhood. The parties and their experts, however, debate the possible significance of high or low concentrations of PCE in particular monitoring wells associated with the Al Philips plume. Mr. Howe asserts that the high concentration of PCE found in some wells on the Boulevard Mall property suggest a localized source. Mr. Howe argues that the proposed soil gas testing will be useful in indicating concentrations or "hot-spots" of PCE possibly associated with the former automotive service facilities in the area. He also indicates that the soil gas test results will provide a basis for placing new monitoring wells down gradient "of the Goodyear and Firestone facilities and any other facilities that may have used PCE in past operations." *Mr. Howe's November 23, 2010 Report*, page 12. Third Party Defendants argue, however, that there is no basis for Mr. Howe's assertion that the monitoring well readings indicate localized sources of PCE other than the Al Philips facility. They argue that the well readings are consistent with the eastward migration of the Al Philips plume. The Boulevard Mall, LLC argues that there is simply no basis to believe that the soil gas testing will produce evidence of other sources of PCE to the Al Philips plume.

If this matter was before the court on a motion for summary judgment, it is likely that the court would hold that the Kishner Defendants have not produced sufficient evidence to raise a triable issue of fact that PCE in the Al Philips plume was caused by sources other than the Al Philips dry cleaning facility or that the Dr. Clean PCE plume is a contributing cause of the PCE vapor intrusion in the residential area east of the Boulevard Mall property. The Court, however, is required to decide the instant motion under a more lenient discovery standard and determine

whether the Kishner Defendants have made a sufficient threshold factual showing to support the proposed testing.

Mr. Howe's theory that the Dr. Clean plume has moved far to the southeast into the residential neighborhood where vapor intrusion has been discovered is only a possibility. This theory has some arguable basis due to the fact that the Dr. Clean plume has not been adequately delineated, which results, in part, from Sears' refusal to permit testing on its property. Mr. Howe's assertion that PCE discharges from the former Sears automotive center may have contributed to the Dr. Clean plume is also based on conjecture. It has not, however, been negated as a possibility by previous soils or other testing conducted in the vicinity of that facility. The proposed soil gas testing may negate either or both of Mr. Howe's theories. The testing will not, however, by itself, prove Mr. Howe's theories. As he stated in his rebuttal report, "[s]oil gas sampling and analysis is typically used to obtain the information needed to focus more intrusive activities like drilling where most needed, while limiting potential impacts and costs." *Mr. Howe's November 23, 2010 Report*, page 6. He also states that "[n]ew wells should be positioned based on soil gas results . . . ." *Id.*, page 12.

Sears' expert, Ms. Sweetland, does not dispute that soil gas testing is an appropriate method for determining the boundaries of a ground water plume and locating areas of PCE concentration within the plume. If the Dr. Clean plume does, in fact, lie northward of the former Sears automotive center as she predicts, then the proposed soil gas testing could confirm that fact and eliminate any basis for other testing on the mall property or in the residential neighborhood in an effort to connect the Dr. Clean plume to the PCE vapor intrusion. The soils gas test results may also eliminate any basis for Mr. Howe's theory that PCE has traveled in a southerly or southeasterly direction from the Sears property. The basis for conducting soil gas testing in the central and southern portion of the Boulevard Mall property is less compelling than the case for such testing on the Sears owned property. As discussed above, the Al Philips plume has been substantially delineated by monitoring wells located in the Maryland Square Shopping Center, on the Boulevard Mall property and in the residential neighborhood. Although arguably unlikely, it is possible that the proposed testing will reveal areas of PCE concentration in soils or groundwater beneath the

mall property that correlate to the sites of automotive service facilities.

The court now evaluates the burden and potential harm that the proposed soil gas testing will impose on the Third Party Defendants or others. Mr. Howe's November 23, 2010 report describes the manner in which the proposed testing will be performed. His description has not been disputed by the Third Party Defendants or their experts. It appears that the testing can be completed in approximately two weeks. The drilling of the holes, installation and removal of the measuring devices, and final repairs can be scheduled and performed in a manner that does not significantly interfere with the business activities of the property owners or their tenants and customers. Although the testing involves the drilling of a significant number of 2 to 3 inch diameter core holes, the drilling is not as invasive or destructive as the number of holes might suggest when one considers the size of the parking lot areas to be covered and the distance between the core holes. It also appears that once the testing is complete, the core holes can be properly and adequately repaired by re-asphalting or concreting over them.

During the parties' negotiations for an access agreement, Boulevard Mall, LLC's counsel raised a concern regarding possible damage to underground utility lines. No information has been provided to the Court as to whether 18 inch deep core holes are likely to make contact with or damage such facilities. To the extent such danger reasonably exists, a qualified underground utility locating service should be employed. The contractor performing the soils gas testing must also be adequately insured for property damage and personal injury damages that may result from the soil gas testing. Sears, the Boulevard Mall, LLC and other mall property owners should be covered as additional insureds under the installing contractor's insurance policy.

## **CONCLUSION**

The justification for performing the subject soil gas testing is borderline. The Kishner Defendants' and their expert Robert Howe have postulated theories that other businesses or facilities in the area of the Boulevard Mall discharged PCE that has contributed to the PCE plume(s) underlying the residential neighborhood in which PCE vapor intrusion has occurred. Although these theories have some threshold factual basis, the probabilities do not, at present, appear to support them. The proposed soil gas testing may provide evidence that supports the

theories or it may eliminate them as viable assertions. Given the broad scope of relevance for discovery purposes, the Court concludes that it is not unreasonable or an abuse of the discovery process to permit the Kishner Defendants to conduct the proposed soil gas testing. In this regard, the Court also finds that the proposed testing will not be so burdensome, time consuming or damaging to the Third Party Defendant's property that it should be precluded under the factors set forth in Rule 26(b)(2). The Court, however, cautions the Kishner Defendants that they should not view the soil gas testing as prelude to seeking other testing regardless of the results of the soil gas tests. Unless those tests provide substantial evidence to support of Mr. Howe's theories, the Court will look askance at any further requests for testing in pursuit of theories not shown to have substantial factual and scientific support. Accordingly,

**IT IS HEREBY ORDERED** that the Kishner Defendants' Motion to Compel Compliance with Subpoena (#476) is **granted**, subject to the following conditions:

1.   The soil gas testing is be scheduled and coordinated with the Third Party Defendants and other Boulevard Mall Property owners to minimize the interference with the business operations of the mall, the mall tenants and their customers;

2.   The Kishner Defendants and their contractors shall use the services of an underground utility locating service if the depth of the core holes present a reasonable risk of damage to underground utility lines or other facilities; and

3.   The soil testing contractor(s) must be adequately insured for property damage and bodily injury damages that may be caused by the soils gas testing. Third Party Defendant Sears, the Boulevard Mall, LLC and other owners of the premises on which the testing is conducted shall also be listed as additional insureds on the installing contractor's insurance policy.

DATED this 13th day of January, 2011.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE