UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PETER J. VOGGENTHALER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MARYLAND SQUARE, LLC, et al.,<br><br>    Defendants.<br>_____<br><br>MARYLAND SQUARE, LLC, et al.,<br><br>    Third Party Plaintiffs,<br><br>v.<br><br>GENERAL GROWTH MANAGEMENT, INC.,<br>a foreign corporation, et al.<br><br>    Third Party Defendants. | 2:08-CV-1618-RCJ-GWF<br><br>**ORDER** |

This case stems from alleged PCE contamination from a dry cleaning facility that operated in a shopping center in Las Vegas, Nevada. On July 22, 2010, the Court entered an Order (#390) granting Plaintiffs summary judgment on their Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), claim. The Court entered a Permanent Injunction (#592) on the RCRA claim on December 27, 2010.[1]

In addition to Plaintiffs' RCRA cause of action, there have been numerous cross-claims and third-party claims filed. Currently before the Court is Third Party Defendant Hoyt Corporation's

---

[1] The Court's order granting summary judgment on the RCRA cause of action and the entry of the permanent injunction are currently on appeal to the Ninth Circuit Court of Appeals. (*See* Amended Notice of Appeal (#602) and Notice of Appeal (#592)).

("Hoyt") Motion to Dismiss Third Party Complaint (#332) filed on June 2, 2010.[2] Hoyt filed a Supplement to its Motion to Dismiss (#472) on September 28, 2010. Third Party Defendant Bowe Permac, Inc. ("Bowe") filed a Joinder (#463) to Hoyt's Motion to Dismiss and a Joinder (#473) to Hoyt's Supplement. For the following reasons, the Court GRANTS the Motion to Dismiss (#390).

## I. Background

On September 3, 2010, Maryland Square Shopping Center, LLC, The Herman Kishner Trust DBA Maryland Square Shopping Center, Irwin Kishner, Jerry Engel, and Bank of America, as Trustees for the Herman Kishner Trust (collectively referred to herein as the "Kishner Defendants") filed a First Amended Third Party Complaint (#447) in this action.[3] The First Amended Third Party Complaint primarily arises under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607. The Kishner Defendants named, among others, Hoyt Corporation ("Hoyt") as a third-party defendant and identifies Hoyt as an "equipment supplier." According to the First Amended Third Party Complaint, Hoyt is a corporation "that supplied material and equipment to Las Vegas, Nevada for the purposes of a dry cleaning operation." (First Am.Third Party Compl. (#447) at 5-6). The First Amended Third Party Complaint states that the Shapiro Defendants and successor entities who operated the dry cleaners "used equipment specifically designed for the purposes of dry cleaning operations." Id. at 9. This equipment was provided by various entities including Hoyt and Bowe. Id. In the First Amended Third Party Complaint, the Kishner Defendants state that the equipment provided by Hoyt and other entities "did not operate properly." Id. They also state that the equipment "was designed improperly," and that the entities that provided the equipment "did not take reasonable care in designing the equipment to protect against spills and/or other accidental releases of PCE or other hazardous materials." Id. As a result of the foregoing, the Kishner Defendants state that they have been harmed. Id. at 10. The First Amended Third Party Complaint asserts four causes of

---

[2] An identical motion was filed in Case No.: 3:09-cv-231-RCJ-GWF on June 25, 2010. That case consolidated with this matter on July 22, 2010. (*See* Minute Order (#77)).

[3] The First Amended Third Party Complaint supersedes and replaces the Third Party Complaint previously filed. The allegations relating to Hoyt and Bowe in the First Amended Third Party Complaint are identical to the initial Third Party Complaint, except that the Third Party Plaintiffs have added a claim for negligence against all Third Party Defendants. Hoyt filed a Supplement to its Motion to Dismiss addressing the new claim. Bowe filed a Joinder to Hoyt's Supplement.

action against Hoyt and Bowe: (1) Recovery of Response Costs Pursuant to CERCLA § 107(a)(1-4)(B); (2) Contribution Pursuant to CERCLA § 13(f); (3) Declaratory Relief; and (4) Negligence.

## II. Legal Standard

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. The Ninth Circuit, however, has expanded the court's view to allow it to consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion into a motion for summary judgment. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The court should exercise caution, however, and presume against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). To avoid a Rule 12(b)(6) dismissal, then, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Clemens v. Daimler Chrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007); Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)(stating that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though "detailed factual allegations" are not required for a complaint to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S.

3

1  at 557, 127 S.Ct. 1955).

2  Hoyt has filed a motion to dismiss the claims asserted against it in the First Amended Third Party Complaint on the grounds that the Kishner Defendants have failed to state a claim upon which relief can be granted against Hoyt. (Mot. to Dismiss Third Party Compl. (#332-1) at 6). According to Hoyt, the Kishner Defendants' claims "rest on the conclusory allegation that Hoyt is liable as an 'arranger'" under CERCLA. Id. The First Amended Third Party Complaint claims that Hoyt is liable under CERCLA because it manufactured and sold dry cleaning equipment that was used by dry cleaners on the Maryland Square property. However, according to Hoyt, numerous courts have rejected imposing CERCLA liability on a product manufacturer, such as Hoyt, which never owned, possessed or controlled the hazardous substances which allegedly caused contamination. Id. In addition, because Hoyt alleges that the Kishner Defendants' CERCLA claim fails, Hoyt argues the remaining claims for relief asserted against Hoyt must also be dismissed because they are dependent on that claim.

In response, the Kishner Defendants concede that the basis of their claim against Hoyt is that Hoyt provided equipment that was used in the dry cleaning facility located in the Maryland Square property between 1968 and 2001. (Opp. to Mot. to Dismiss (#342) at 3). According to the Kishner Defendants, they were harmed as a result of Hoyt's failure to properly design and operate the equipment. Id. at 4. Because of this, the Kishner Defendants argue that Hoyt's motion should be denied as premature: "Whether or not Hoyt is liable for CERCLA response costs as an arranger is a decision that should be made after discovery is completed - not at the very first step of litigation." Id. at 5. The Kishner Defendants state that it "is improper to cut short discovery and the required analysis simply because the evidence is not available at this time." Id.

**III. Hoyt's Liability under CERCLA**

Congress enacted CERCLA to encourage the timely cleanup of hazardous waste sites by placing cleanup cost liability on those responsible for creating or maintaining the condition. Basic Mgmt. Inc. v. United States, 569 F.Supp.2d 1106, 1113 (D.Nev. 2008). Under CERCLA, the federal and state governments may initiate cleanup of toxic areas and sue potentially responsible parties for reimbursement. United States v. Burlington Northern & Santa Fe Ry. Co., 502 F.3d 781, 792 (9th Cir. 2007), reversed on other grounds, ___ U.S. ___, 129 S.Ct. 1870, 173 L.Ed.2d 812 (2009). A key

CERCLA purpose is to shift "the cost of cleaning up environmental harm from the taxpayers to the parties who benefitted from the disposal of the wastes that caused the harm." EPA v. Sequa Corp. (In the Matter of Bell Petroleum Servs., Inc.), 3 F.3d 889, 897 (5th Cir. 1993). CERCLA is a "super-strict" liability statute. Burlington Northern, 502 F.3d at 792. "[L]iability is joint and several when the harm is indivisible." Id.

Section 9607(a) identifies the following as "covered persons" subject to CERCLA contribution claims:

> (1) the **owner and operator** of . . . a facility,
> (2) any person who at the time of disposal of any hazardous substance **owned or operated any facility** at which such hazardous substances were disposed of,
> (3) any person who by contract, agreement, or otherwise **arranged for disposal or treatment**, or **arranged** with a transporter **for transport for disposal or treatment**, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances ["arrangers"], and
> (4) any person who **accepts or accepted** any hazardous substances **for transport** to disposal or treatment facilities . . . or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ["transporters"] . . .
> (Bold added.)

In other words, there are four classes of potentially responsible parties ("PRPs") subject to CERCLA liability: (1) current owners and operators of the facility, (2) past owners and operators of the facility, (3) arrangers, and (4) transporters. Basic Mgmt., 569 F.Supp.2d at 1116. Thus, to plead a prima facie contribution case against Hoyt, the Kishner Defendants must assert factual allegations that Hoyt is "within one of four classes of persons subject to CERCLA's liability provisions." California Dept. of Toxic Substances Control v. Payless Cleaners, 368 F.Supp.2d 1069, 1076 (E.D.Cal. 2005). Here, the Kishner Defendants seek to hold Hoyt liable as an "arranger" under CERCLA.

As noted in the foregoing, arranger liability under CERCLA arises when "any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3); see also Basic Mgmt., 569 F.Supp.2d at 1116. "The term 'arranged for' is not defined in CERCLA. Basic Mgmt., 569 F.Supp.2d at 1116. The "issues involved in determining 'arranger' liability under CERCLA are distinct from those involved in determining 'owner' or 'operator' liability." Coeur D'Alene Tribe v. Asarco,

Inc., 280 F.Supp. 2d 1094, 1130-31 (D.Idaho 2003)(citing Cadillac Fairview/California, Inc. v. United States, 41 F.3d 562, 564 (9th Cir. 1994)). Indeed, "arranger liability requires active involvement in the arrangements of disposal of hazardous substances. However, control is not a necessary factor in every arranger case. The Court must consider the totality of the circumstances . . . to determine whether the facts fit within CERCLA's remedial scheme . . . . [T]here must be a 'nexus' that allows one to be an arranger." Id. at 1131 (internal citations omitted).

There are two lines of cases in the area of direct arranger liability: (1) "traditional" arranger liability cases in which "the sole purpose of the transaction is to arrange for the treatment or disposal of the hazardous wastes," United States v. Shell Oil Co., 294 F.3d 1045, 1054 (9th Cir. 2002)(citations omitted), and (2) "broader" arranger liability, in which "control is a crucial element of the [fact-specific] determination of whether a party is an arranger." Id. at 1055.

This is not a traditional arranger liability case. There are no allegations in the First Amended Third Party Complaint that Hoyt entered into any transaction for the sole purpose of discarding hazardous waste. The First Amended Third Party Complaint merely alleges that Hoyt's intent was to supply material and equipment "for the purposes of a dry cleaning operation." (First Am.Third Party Compl. (#447) at 5). Thus, the First Amended Third Party Complaint appears to be seeking liability under the "broader arranger" theory of liability.

In this case, Hoyt argues that the Kishner Defendants have failed to state a claim for broader arranger liability because the allegation that Hoyt supplied dry cleaning equipment used by others is insufficient to impose such liability. (Mot. to Dismiss (#332-1) at 11). In broader arranger cases, Hoyt states that there are three "independent hurdles" a plaintiff must overcome "through well pleaded allegations" to impose liability upon a product manufacturer: (1) that the product manufacturer intended to dispose of hazardous substance through the sale of its product; (2) the useful product exception does not apply; and (3) the product manufacturer exercised ownership, possession or control of hazardous substances. Id. According to Hoyt, the Kishner Defendants have failed to overcome any of these hurdles.

**A. Intentional Disposal**

Hoyt first argues that the Kishner Defendants "have failed to allege and cannot allege that Hoyt

intended to dispose of a hazardous substance through the sale of its products." (Mot. to Dismiss (#332-1) at 11). Not only does the First Amended Third Party Complaint fail to allege that the equipment caused the contamination, but, according to Hoyt, nowhere do the Kishner Defendants allege that Hoyt's purpose in supplying its alleged equipment was to dispose of hazardous substances, or that Hoyt intended or planned for the disposal of hazardous substances by selling its equipment. Id. at 11-12.

The United States Supreme Court recently explained that "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." Burlington Northern, ___ U.S. ___, 129 S.Ct. 1870, 1879 (2009). In Burlington Northern, the Supreme Court held that pesticide manufacturer Shell Oil Company was not an arranger despite its knowledge of pesticide spills during transfers and deliveries, due to equipment failures. The Supreme Court explained:

> While it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, **knowledge alone is insufficient to prove that an entity "planned for" the disposal**, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product. In order to qualify as an arranger, Shell must have entered into the sale of [its product] **with the intention** that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3).
> . . . Shell's **mere knowledge** that spills and leaks continued to occur is insufficient grounds for concluding that Shell 'arranged for' the disposal of [a hazardous] substance within the meaning of § 9607(a)(3).

Burlington Northern, ___ U.S. ___, 129 S.Ct. at 1880.

Relying on Burlington Northern, the United States District Court for the Eastern District of California recently ruled that Hoyt could not be subject to arranger liability under CERCLA based on mere allegations that its equipment was used at a dry cleaning facility. Hinds Inv. v. Team Enter., 2010 WL 1663986 (E.D. Cal. 2010). In that case, the court dismissed the CERCLA claims asserted against Hoyt by the plaintiff, an owner of property upon which a dry cleaning business operated. Id. In addressing the intentional disposal element of arranger liability under CERCLA, the court held that Hoyt's alleged knowledge of its product's operation was insufficient to establish that Hoyt intentionally disposed of waste. Id.

Here, the First Amended Third Party Complaint alleges conclusions, without factual support, that Hoyt's equipment was designed improperly and operated improperly. The First Amended Third Party

Complaint does not allege Hoyt planned for the disposal or took intentional steps toward disposal of a hazardous substance. In fact, the First Amended Third Party Complaint alleges that Hoyt's "purpose" was to supply equipment for "dry cleaning operations." (First Am. Third Party Compl. (#447) at 5). The conclusory allegations as to Hoyt's supply and design of its equipment are not enough to support a claim that Hoyt took intentional steps to dispose of a hazardous substance. Thus, this claim is dismissed. Moreover, as will be discussed below, the useful product defense defeats the Kishner Defendants' CERCLA arranger claims as to Hoyt.[4]

### B. Useful Product Defense

Hoyt claims that the useful product defense creates an "insurmountable barrier" to the Kishner Defendants' CERCLA claims against Hoyt. According to Hoyt, this defense, recently adopted by the Supreme Court in Burlington North, provides that an entity cannot be held liable as an arranger merely for selling a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination. (Mot. to Dismiss (#332-1) at 14). In response, the Kishner Defendants argue that this defense is premature because "[i]t is yet to be determined whether Hoyt had involvement necessary and the authority appropriate to hold it liable for otherwise arranging the disposal of PCE relevant to this case." (Opp. to Mot. to Dismiss (#342) at 6).

Under CERCLA litigation, a body of case law has developed distinguishing between the disposal or treatment of "waste" and the sale of a "useful product." California Dept. of Toxic Substances Control v. Alco Pacific, Inc., 508 F.3d 930, 934 (9th Cir. 2007)(citing Burlington, 479 F.3d at 1140-41; A & W Smelter & Refiners, Inc. v. Clinton, 146 F.3d 1107, 1112 (9th Cir. 1998); Catellus Dev. Corp. v. United States, 34 F.3d 748, 750 (9th Cir. 1994)). "A person may be held liable as an 'arranger' under § 9607(a)(3) only if the material in question constitutes 'waste' rather than a 'useful product.'" Id. Application of this distinction has been referred to as the "useful product doctrine." Id.

The useful product doctrine "applies when the sale is of a new product, manufactured specifically for the purpose of sale, or of a product that remains useful for its normal purpose in its existing state." California v. Summer Del Caribe, Inc., 821 F.Supp. 574, 581 (N.D.Cal. 1993). "The vendor of a useful

---

[4] The same analysis applies to Bowe who filed a Joinder to Hoyt's Motion to Dismiss and Supplement. As such, this claim is dismissed as to Bowe also.

product which through its normal course produces a hazardous substance, such as a battery, is not an arranger under CERCLA." Payless Cleaners, 368 F.Supp.2d at 1077 (citing Cadillac Fairview/Cal., Inc. v. United States, 41 F.3d 562, 566 (9th Cir. 1994)). A manufacturer of PCE cannot be held liable "as a CERCLA arranger where it has done nothing more than sell a useful chemical." Id. "[T]he manufacturer of dry cleaning equipment who does nothing more than provide the machines and operating instructions is not an 'arranger' of waste disposal under CERCLA." Adobe Lumber v. Hellman, 415 F.Supp.2d 1070, 1081 (E.D.Cal. 2006), vacated on other grounds sub nom. Kotrous v. Goss-Jewett Co., 523 F.3d 924, 934 (9th Cir. 2008).

The useful product defense arises of out CERCLA's definition of "disposal" (section 9601(29))[5] in that merely identifying a "hazardous substance" is insufficient to establish that its placement in a facility constitutes "disposal of any hazardous substance" under CERCLA. See 3550 Stevens Creek Assoc. v. Barclays Bank of Calif., 915 F.2d 1355, 1360-61 (9th Cir. 1990). For CERCLA purposes, "disposal" is construed "as referring only to an affirmative act of discarding a substance as waste, and not to the productive use of the substance." Id.

In the CERCLA context, "hazardous substances are generally dealt with at the point when they are about to, or have become, wastes." 3550 Stevens Creek, 915 F.2d at 1362. Congress did not intend CERCLA to target legitimate manufacturers or sellers of useful products but rather desired "to hold liable those who would attempt to dispose of hazardous wastes or substances under various deceptive guises in order to escape liability for their disposal." Dayton Indep. School Dist. v. U.S. Mineral Prods. Co., 906 F.2d 1059, 1065-66 (5th Cir. 1990).

Acknowledging its "expansive view of arranger liability," the Ninth Circuit has "refused to hold manufacturers liable as arrangers for selling a useful product containing or generating hazardous substances that *later* were disposed of." Burlington Northern, 502 F.3d at 808 (italics in original). "Useful product" cases recognize that "liability cannot extend so far as to include *all* manufacturers of

---

[5] CERCLA borrows the Solid Waste Disposal Act's definition of "disposal" which "means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

hazardous substances, on the theory that there will have to be disposal of the substance some time down the line, *after* it is used as intended." Id. (italics in original).

In a similar case pending against Hoyt in the Eastern District of California, the court found that the useful product defense barred CERCLA claims against Hoyt. Hinds Inv., 2010 WL 1663986. The plaintiff in that case alleged that CERCLA liability could be imposed on a dry cleaning equipment manufacturer where the manufacturer designed its equipment to dispose of waste and provided the operator with disposal guidelines. Id. Despite these allegations, the court found that plaintiff failed to state a claim under CERCLA and dismissed the case in its entirety with prejudice. The court found that the useful product defense barred the plaintiff's CERCLA claims against Hoyt. The court found significant that the manufacture and sale of Hoyt equipment was an event that neither produces nor involves hazardous substances directly.

In this case, the Court also dismisses the CERCLA claims against Hoyt based on the useful product defense. The allegations in the Kishner Defendants' First Amended Third Party Complaint do not allege that the Hoyt equipment is a hazardous substance, nor that the sale of the equipment was for an arrangement for disposal of hazardous substances. The transaction at issue here is the sale of dry cleaning equipment, an event which neither produces nor involves hazardous substances directly.[6] The First Amended Third Party Complaint fails to allege facts that the manufacture or sale of the dry cleaning equipment by Hoyt constitutes an "arrangement for the ultimate disposal of a hazardous substance." Payless, 368 F.Supp.2d at 1077. Based on the foregoing, the useful product defense defeats the Kishner Defendant's arranger claims as to Hoyt and Bowe.

### C. Ownership, Possession or Control of Hazardous Substances

Finally, Hoyt states that the CERCLA claims must be dismissed because the Kishner Defendants fail to allege that Hoyt had ownership, possession or control of any hazardous substance. (Mot. to Dismiss (#332-1) at 16). According to Hoyt, in order to state a valid claim for relief, the Kishner

---

[6] As noted by the Court in a similar case: The plaintiffs do not allege any facts to support a finding that a substantial part of Maytag's sale of dry cleaning machines involved the arrangement for the disposal of waste water. Rather, Maytag's transaction can be described only as the sale of a useful good which, through its normal use, created a waste byproduct. Under these facts alone, Maytag may not be held liable as a CERCLA arranger. Payless, 368 F.Supp.2d at 1078.

Defendants are required to allege or show that Hoyt owned or possessed the hazardous substances, or had the authority to control the disposal practices or a duty to dispose of the hazardous substances at the subject property. Id. Because the First Amended Third Party Complaint lacks such allegations, Hoyt states the claims against it must be dismissed. The Kishner Defendants did not address this argument in their Opposition.

"No court has imposed arranger liability on a party who never owned or possessed, and never had any authority to control or duty to dispose of, the hazardous materials at issue." Shell Oil, 294 F.3d at 1058 (citing General Elec. Co. v. AAMCO Transmission, Inc., 962 F.2d 281, 286 (2d Cir. 1992)(stating "it is the *obligation* to exercise control over hazardous waste disposal, and not the mere ability or opportunity to control the disposal of hazardous substances that makes an entity an arranger under CERCLA's liability provisions")(emphasis in original)).

Here, not only did the Kishner Defendants fail to respond to Hoyt's argument on this issue, but the First Amended Third Party Complaint is completely devoid of any facts that Hoyt had any ownership, possession or control over a hazardous substance. Because Hoyt is not subject to liability in the absence of allegations of its ownership, possession or control of hazardous substances at disposal or otherwise, the CERCLA claims must be dismissed for failure to state a claim.[7]

### IV. Declaratory Relief Claim

Hoyt argues that the Kishner Defendants' claim for declaratory relief must be dismissed. (Mot. to Dismiss (#331-1) at 18). According to Hoyt, this claim is derivative to the CERCLA claims and must fail in the absence of any predicate liability. In other words, if the First Amended Third Party Complaint's CERCLA claims against Hoyt are dismissed, then the declaratory relief claim must also be dismissed.

In this matter, the Kishner Defendants' declaratory relief claim is derivative of their CERCLA claim. Thus, this claim is dismissed against Hoyt and Bowe.

///

---

[7] The same analysis applies to the claims asserted against Bowe. Thus, the Court dismisses the CERCLA claims pending against Bowe based on Bowe's Joinder (#463) in Hoyt's Motion to Dismiss.

## V. Negligence Claim

In the First Amended Third Party Complaint, the Kishner Defendants assert a claim for negligence against all Third Party Defendants. According to that claim, the Kishner Defendants assert that "during the Third Party Defendants' ownership and operation of various facilities, sudden and accidental releases of PCE occurred that contributed to the PCE plume." (First Am. Third Party Compl. (#447) at 16). In addition, the claim asserts that the Kishner Defendants "had a duty to properly and reasonably handle and dispose of PCE and other hazardous materials." Id. The Kishner Defendants asserts that the Third Party Defendants breached this duty "by negligently causing, permitting and/or contributing to contamination resulting from their ownership and operations of various facilities." Id. at 17.

Hoyt moves to dismiss the negligence claim asserted against it on the grounds that the claim is based on the ownership of a "facility," as indicated in the First Amended Third Party Complaint. (Supp. Mot. to Dismiss (#472) at 2). However, according to Hoyt, the "Kishner Parties did not allege, nor could they, that Hoyt owned or operated any property that allegedly contributed to the contamination at issue." Id. at 2-3. Rather, the only facts alleged by the Kishner Defendants is that Hoyt manufactured dry cleaning equipment that was used by others at a dry cleaning facility. Id. Because the First Amended Third Party Complaint does not include any facts that Hoyt owned or operated a dry cleaning facility, or any of the surrounding properties that the Kishner Defendants claimed contributed to the PCE plume, Hoyt argues that the negligence claim must be dismissed.

The Court agrees. The negligence claim alleged in the First Amended Third Party Complaint relates to parties that owned "facilities" upon which releases of PCE occurred. The First Amended Third Party Complaint does not provide any factual basis that Hoyt owned such a facility. Rather, the allegations against Hoyt are that it was an equipment supplier. In addition, any state law negligence claim against Hoyt can be raised in the state court handling the related litigation. As noted at oral argument by the parties, the state court previously granted Hoyt's motion to dismiss and granted the Kishner Defendants leave to amend. Because this Court has dismissed the federal causes of action asserted against Hoyt, the state court is the proper forum for any amended negligence claim.

///

## VI. Conclusion

Based on the foregoing, the Court GRANTS Hoyt's Motion to Dismiss (#332), Supplement to Motion to Dismiss (#472), and Bowe's Joinders (#463) and (#473). Hoyt and Bowe are terminated as parties to this litigation.

IT IS SO ORDERED.

Dated: February 4, 2011

_____
UNITED STATES DISTRICT JUDGE