1    ROBERTSON & ASSOCIATES, LLP
     Alexander Robertson, IV (NV Bar No. 8642)
2      *arobertson@arobertsonlaw.com*
     32121 Lindero Canyon Road, Suite 200
3      Westlake Village, California 91361
     Telephone: (818) 851-3850
4      Facsimile: (818) 851-3851

5    GREBEN & ASSOCIATES
     Jan Adam Greben (CA Bar No. 103464)
6      Admitted *Pro Hac Vice*
     *jan@grebenlaw.com*
7      1332 Anacapa Street, Suite 110
     Santa Barbara, CA 93101
8      Telephone: (805) 963-9090
     Facsimile: (805) 963-9098

9

10    Attorneys for PLAINTIFFS

11              UNITED STATES DISTRICT COURT

12                DISTRICT OF NEVADA

13

| | |
|---|---|
| 14   PETER J. VOGGENTHALER; VICTOR BECERRA; ARTHUR | Case No. 2:08-CV-1618 |
| 15   BODENDORFER; BRENDA C. CHAFFIN; MICHAEL J. SOLMI; | **PLAINTIFFS' STATUS REPORT AND REQUEST FOR DISPUTE** |
| 16   JASON COWLES; JANE GAUTHIER; HONORE GAUTHIER; NIKOLAS | **RESOLUTION PER SECTION X OF THE PERMANENT** |
| 17   KONSTANTINOU; DRAGAN KURAJICA; KENNETH LOWTHER; | **INJUNCTION** |
| 18   JAMES LUEHMANN; JACQUELINE LUEHMANN; RUTH | Judge: Hon. Robert C. Jones |
| 19   MANNHEIMER; WILLIAM MONTERO; BARBARA MONTERO; | Date: September 25, 2014 |
| 20   CLIFFORD ROGERS; SHARON ROGERS; HERMANN ROSNER; | Time: 9:00 a.m. |

14 PETER J. VOGGENTHALER; VICTOR BECERRA; ARTHUR
BODENDORFER; BRENDA C.
15 CHAFFIN; MICHAEL J. SOLMI;
JASON COWLES; JANE GAUTHIER;
16 HONORE GAUTHIER; NIKOLAS
KONSTANTINOU; DRAGAN
17 KURAJICA; KENNETH LOWTHER;
JAMES LUEHMANN; JACQUELINE
18 LUEHMANN; RUTH
MANNHEIMER; WILLIAM
19 MONTERO; BARBARA MONTERO;
CLIFFORD ROGERS; SHARON
20 ROGERS; HERMANN ROSNER;
MARKUS ROTHKRANZ; DANIEL
21 SOLDINI; CHARLES WALKER;
VERNA WALKER; JACK
22 YENCHEK; OFELIA YENCHEK;
RICHARD MALM; ROGER
23 ELLSWORTH; JO ANN
ELLSWORTH; MARGARET
24 RUDELICH-HOPPE; PATRICIA
MAHONEY, individually and as trustee
25 for the MAHONEY LIVING TRUST;
RICHARD FALEN; PETER
26 LEARNED; KRISTIAN MEIER;
ELIZA ACOSTA; MIRHA ELIAS;
27 AIKO BERGE,

28            Plaintiffs.

Case No. 2:08-CV-1618

**PLAINTIFFS' STATUS REPORT AND REQUEST FOR DISPUTE RESOLUTION PER SECTION X OF THE PERMANENT INJUNCTION**

Judge: Hon. Robert C. Jones
Date: September 25, 2014
Time: 9:00 a.m.

ROBERTSON
& ASSOCIATES, LLP

16861.1                                                  2:08-CV-1618
PLAINTIFFS' STATUS CONFERENCE STATEMENT AND REQUEST FOR DISPUTE RESOLUTION
PURSUANT TO SECTION X OF THE PERMANENT INJUNCTION, DATED DECEMBER 27, 2010

vs.

MARYLAND SQUARE, LLC; MARYLAND SQUARE SHOPPING CENTER LIMITED LIABILITY COMPANY; HERMAN KISHNER dba MARYLAND SQUARE SHOPPING CENTER; IRWIN KISHNER, JERRY ENGEL, BANK OF AMERICA as Trustees for the HERMAN KISHNER TRUST; CLARK COUNTY SCHOOL DISTRICT; THE BOULEVARD MALL, as successor-in-interest/ surviving corporation/ agent for BOULEVARD ASSOCIATES, L.L.C.; BOULEVARD MALL I LLC, as successor-in-interest/surviving corporation/ agent for BOULEVARD ASSOCIATES, L.L.C.; BOULEVARD MALL II L.L.C., as successor-in-interest/surviving corporation/ agent for BOULEVARD ASSOCIATES, LLC; CONSTRUCTION DEVELOPERS INC.; FEDERATED WESTERN DEPT. STORES, INC.; GENERAL GROWTH PROPERTIES; MELVIN SHAPIRO; SHAPIRO BROS. INVESTMENT CO.; DELIA'S CLEANERS OF ARIZONA, INC.; CB RICHARD ELLIS,

Defendants.

COME NOW PLAINTIFFS, by and through their counsel, Alexander Robertson, IV, Esq., and Jan A. Greben, Esq., who hereby submit this Status Report for the September 25, 2014 Status Conference.

## **STATUS REPORT**

NDEP and the Defendants have filed a Joint Motion to Approve Corrective Action Report ("CAR") (Dkt. 1046).  NDEP's motion requests this Court to approve the CAR.  The motion further states that once the CAR is approved by this Court:

> *"NDEP then releases the Proposed Plan to the public for a comment period of not less than 30 days and holds a public meeting to present the information and respond to comments.  [40 CFR] at §300.430(f)(3). NDEP then prepares a summary of the comments, criticisms, and new information submitted during the public comment period and a*

16861.1

2

2:08-CV-1618

PLAINTIFFS' STATUS CONFERENCE STATEMENT AND REQUEST FOR DISPUTE RESOLUTION PURSUANT TO SECTION X OF THE PERMANENT INJUNCTION, DATED DECEMBER 27, 2010

*response to each issue. Id at §300.430(f)(3)(i)(F).  The Proposed Plan is neither a final agency decision nor selection of a final remedy.  Any significant changes in the preferred remedy are addressed in the Record of Decision ("ROD") or a revised proposed plan followed by a ROD."* NDEP's Motion at p. 3:14-21.

NDEP's motion further explains that "NDEP and the Kishner Defendants request approval of the CAR so that the public comment period on the Proposed Plan can be initiated as quickly as possible and run in tandem with the briefing periods set forth in the Stipulation and Order Regarding Permanent Injunction (Dkt. #1045).  However, the public comment period does not run "in tandem" with the briefing schedule set forth in the Stipulation. The Stipulation provides that "*NDEP shall submit the Proposed Plan to the Court for approval on or before July 28, 2014.  <u>Any party or person objecting to the Proposed Plan shall file and serve an objection no later than August 18, 2014</u>.  Any response in support of the Proposed Plan shall be filed on or before September 25, 2014. The Court will conduct a status conference on September 25, 2014, for the purpose of considering the Proposed Plan.  If necessary, the Parties will present any evidence in support of or in objection to the Proposed Plan at the September 25 hearing*." (emphasis added).

First, the "briefing schedule" set forth in the Stipulation expired one week before the Order was signed by this Court and has expired before the public comment period has even begun.

Second, the Court cannot approve the Proposed Plan at the September 25th status conference, because the Proposed Plan has not even been released to the public for comment.  As explained in NDEP's own motion, it only seeks approval of the CAR at the September 25th status conference, so that NDEP can then release the Proposed Plan to the public for a comment period of not less than 30 days pursuant to 40 CFR § 300.430(f)(3).  Thereafter, NDEP must prepare a summary of the comments, criticisms and any new information submitted during the public comment period and then response to each comment and criticism.  *Id*. at § 300.430(f)(3)(i)(F). Therefore, it is inconsistent with both the terms of the

1  Permanent Injunction, 40 CFR § 300.430 and NDEP's own motion to "approve the

2  Proposed Plan" at the upcoming September 25th status conference.

3      Third, Plaintiffs have both procedural and due process rights to object to the

4  Proposed Plan, which cannot be abridged by any purported "approval" of the

5  Proposed Plan at the September 25th status conference.  As explained above, federal

6  law requires NDEP to release the Proposed Plan to the public for comment for a

7  period of not less than 30 days.  To date, the Proposed Plan has not been release to

8  the public for comment.  Additionally, pursuant to the terms of the Permanent

9  Injunction, Plaintiffs have the right to participate in the Dispute Resolution process

10  defined in Section X of the injunction if they disagree with any decision, or failure

11  to make a decision by NDEP pursuant to the Injunction.  Plaintiffs have sent a

12  Notice of Dispute to NDEP objecting to the CAR and the Proposed Plan, a copy of

13  which is attached hereto.  Pursuant to Section X of the Injunction, both NDEP and

14  the Defendants shall have thirty (30) days or such time as the Court may require to

15  respond to the Plaintiff's Notice of Dispute.

16      The Kishner Defendants have put the cart before the horse, and not even

17  NDEP is asking this Court to approve the Proposed Plan at the September 25, 2014

18  status conference.  Plaintiffs respectfully urge this Court not to deviate from the

19  terms of the Permanent Injunction and not approve the Proposed Plan at the

20  upcoming status conference until such time as the public has had an opportunity to

21  learn about the Plan and comment on same.

22              **REQUEST FOR DISPUTE RESOLUTION**

23      After more than ten (10) years of inaction by NDEP, the Plaintiff

24  homeowners were forced to act as private attorney generals and bring this RCRA

25  action to force the cleanup of contaminated shallow groundwater beneath their

26  neighborhood, which has caused vapors from this hazardous waste to enter their

27  homes through a process called "vapor intrusion."  The Plaintiffs obtained a

28

ROBERTSON
& ASSOCIATES, LLP

16861.1                                4                          2:08-CV-1618
PLAINTIFFS' STATUS CONFERENCE STATEMENT AND REQUEST FOR DISPUTE RESOLUTION
PURSUANT TO SECTION X OF THE PERMANENT INJUNCTION, DATED DECEMBER 27, 2010

1   judgment against the Kishner Defendants, which resulted in this Court issuing a

2   Permanent Injunction on December 27, 2010.

3          The Injunction established a series of deadlines for the Defendants and NDEP

4   to conduct certain analysis, pilot studies of potential cleanup methodologies, and

5   eventual cleanup of the contaminated groundwater beneath the Plaintiffs' homes.

6   However, in every instance, the Defendants and NDEP have missed those deadlines

7   by years without ever seeking permission from this Court to deviate from the

8   deadlines imposed by the Injunction.

9          For example, the Permanent Injunction set a deadline of October 11, 2010 for

10  the Defendants to submit a Corrective Action Plan ("CAP") for Groundwater to

11  NDEP for approval.  The draft CAP for Groundwater was submitted by the

12  Defendants on October 24, 2011 - **one year late**.  The Injunction also set a deadline

13  for the Defendants to submit a Corrective Action Report ("CAR") one-hundred and

14  eighty (180) days after NDEP's approval of the CAP for Groundwater.  NDEP

15  approved the Defendants' CAP for Groundwater on June 13, 2011, and NDEP set a

16  deadline of June 29, 2012 for the Defendants to submit their CAR.  However,

17  Defendants did not submit this required report to NDEP until June 14, 2013, a full

18  year after the deadline in the Permanent Injunction.  That CAR was rejected by

19  NDEP and the final version of the CAR is the subject of NDEP's motion (Dkt. 1046)

20  set to be argued on September 25, 2014, more than two (2) years late!

21         **To date, no cleanup of the contaminated groundwater has begun more**

22  **than fourteen (14) years after the contamination was first reported to NDEP,**

23  **and nearly four (4) years since this Court issued the Injunction!**  Meanwhile, the

24  plume of hazardous waste has continued to migrate further east into new

25  neighborhoods and the situation has become more dire.

26         Indeed, on February 21, 2014, NDEP issued a letter to the Defendants, which

27  contained the ominous conclusion:

28

ROBERTSON
& ASSOCIATES, LLP

16861.1                                    5                                    2:08-CV-1618
PLAINTIFFS' STATUS CONFERENCE STATEMENT AND REQUEST FOR DISPUTE RESOLUTION
PURSUANT TO SECTION X OF THE PERMANENT INJUNCTION, DATED DECEMBER 27, 2010

1      *"A new milestone was set in the fourth quarter, with the detection of*

2      *10,000 micrograms per liter (ug/L) of PCE in the groundwater sample*

3      *collected from well MW-14I.  This is the highest concentration of PCE ever*

4      *reported for groundwater at the site."*

5      To put this reading into context, NDEP has set a clean-up standard for

6 groundwater of 100 ug/L in this area, meaning that nearly 4 years after this

7 Injunction was issued, the concentration of PCE in the groundwater has increased

8 100 times at that location adjacent to the former Al Philips dry cleaner site.

9      The Permanent Injunction also required the Defendants to "define the

10 downgradient extent of the site groundwater plume containing more than 5 μg/l of

11 PCE, identify any domestic wells within this plume, and take appropriate action to

12 assure that the drinking water standards for PCE and its degradation products are not

13 exceeded in these water supply wells."  This work was supposed to have been done

14 by the Defendants within sixty (60) days of the effective date of the Injunction, or

15 by February 27, 2011.  **However, despite confirmation from NDEP that there are**

16 **domestic water wells on residential properties east of Eastern Avenue, neither**

17 **the Defendants or NDEP have taken any apparent steps to survey the homes**

18 **east of Eastern Ave. where the plume has now migrated, to determine if they**

19 **are contaminated with this hazardous waste or to at least notify these**

20 **homeowners that their water wells may be contaminated!**

21      At the one and only Community Meeting held by NDEP with the

22 homeowners on October 26, 2010, NDEP represented that the remedial clean-up of

23 the contaminated groundwater would start in the Summer of 2013, which deadline

24 came and went.

25      Plaintiffs are informed that to date, the Kishner Defendants have spent

26 approximately $2,500,000 in investigation costs, of which only approximately

27 $600,000 has been spent on actual cleanup costs to dig up the contaminated soil at

28 the site of the former dry cleaners and haul it off to a hazardous waste landfill.

Robertson & Associates, LLP

16861.1           6           2:08-CV-1618

PLAINTIFFS' STATUS CONFERENCE STATEMENT AND REQUEST FOR DISPUTE RESOLUTION
PURSUANT TO SECTION X OF THE PERMANENT INJUNCTION, DATED DECEMBER 27, 2010

1   NDEP's bureaucratic dithering has done nothing more than line the pockets of the
2   Defendants' experts and done nothing to actually cleanup the contaminated
3   groundwater beneath the Plaintiffs' neighborhood.

4           The PCE contamination was first reported to NDEP on November 29, 2000.
5   For the next ten (10) years, NDEP ordered study after study of the PCE Plume, but
6   took no legal action to force the Defendants to comply with Nevada and federal law
7   to clean-up the contamination.  It was the Plaintiffs, and not NDEP, which filed the
8   RCRA action in federal court and obtained a judgment against the Defendants,
9   resulting in the issuance of the Permanent Injunction.  Unfortunately for the
10  homeowners, this Court put NDEP in charge of the cleanup of the PCE
11  contamination.  Sadly, NDEP has done nothing more than order the Kishner
12  Defendants to drill more monitoring wells, perform a failed pilot study and continue
13  to issue quarterly reports tracking the migration and concentration levels of the
14  contaminated groundwater as it marches beneath even more unsuspecting homes.
15  **Now, NDEP has issued a Proposed Plan which adopts the very same cleanup**
16  **methods which failed during the pilot studies conducted by the Defendants!**
17  See, Letter from Peter Krasnoff, P.E., attached to hereto.

18          All the Plaintiffs ever wanted was to have the hazardous waste which has
19  migrated beneath their neighborhood, through no fault of their own, properly and
20  permanently removed.  They have lived with the bureaucratic dithering by NDEP
21  for the past fourteen (14) years waiting for this cleanup to happen.  They took the
22  responsible defendants to court and won a judgment and obtained a Permanent
23  Injunction requiring the timely cleanup of their neighborhood.  Sadly, nearly four
24  more years have elapsed with no cleanup of the contaminated groundwater having
25  even started.  Now, NDEP has proposed a Plan which relies up methods of
26  remediation which the Kishner Defendants' own experts have admitted failed during
27  pilot tests.  It appears that NDEP has simply given up its regulatory responsibility
28

ROBERTSON
& ASSOCIATES, LLP

16861.1                                                    7                                          2:08-CV-1618
PLAINTIFFS' STATUS CONFERENCE STATEMENT AND REQUEST FOR DISPUTE RESOLUTION
PURSUANT TO SECTION X OF THE PERMANENT INJUNCTION, DATED DECEMBER 27, 2010

1   and will rubber stamp even a cleanup method(s) which have already proven not to

2   work during trial runs.

3        Pursuant to the Dispute Resolution provisions of the Permanent Injunction,

4   Plaintiffs have served the attached Notice of Dispute on NDEP setting forth their

5   strong objections to the Proposed Plan in advance of the public comment period

6   even beginning.  NDEP now has thirty (30 ) days to respond per Section X(B) of the

7   Injunction.

8        Plaintiffs respectfully request this Court to continue this Status Conference

9   for a period of sixty (60) days to allow the Dispute Resolution process contained in

10  the Injunction to occur.

11  DATED: September 19, 2014                    Respectfully submitted,

12                                               ROBERTSON & ASSOCIATES, LLP

13

14                                               / s / Alexander Robertson

15  _____

16                                               Alexander Robertson, IV
                                                 Nevada Bar No. 8642
17                                               32121 Lindero Canyon Road, Suite 200
                                                 Westlake Village, CA 91361

18                                               GREBEN & ASSOCIATES
                                                 Jan Adam Greben (CA Bar No. 103464)
19                                               Admitted Pro Hac Vice
                                                 1332 Anacapa Street, Suite 110
20                                               Santa Barbara, CA  93101

21                                               **Attorneys for Plaintiffs**

22

23

24

25

26

27

28

ROBERTSON
& ASSOCIATES, LLP

16861.1                                  8                          2:08-CV-1618
PLAINTIFFS' STATUS CONFERENCE STATEMENT AND REQUEST FOR DISPUTE RESOLUTION
PURSUANT TO SECTION X OF THE PERMANENT INJUNCTION, DATED DECEMBER 27, 2010

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on this 19th day of September, 2014, a copy of the

3  foregoing document entitled **PLAINTIFFS' STATUS REPORT AND REQUEST**

4  **FOR DISPUTE RESOLUTION PER SECTION X OF THE PERMANENT**

5  **INJUNCTION** was filed and served by electronic means via this Court's CM/ECF

6  system to:

7

8                    **PLEASE SEE E-SERVICE MASTER LIST**

9

10                                    */ s / Christine Barber*

11                                    An employee of the law firm of Greben
                                       & Associates
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBERTSON
& ASSOCIATES, LLP

16861.1                                        9                           2:08-CV-1618
PLAINTIFFS' STATUS CONFERENCE STATEMENT AND REQUEST FOR DISPUTE RESOLUTION
PURSUANT TO SECTION X OF THE PERMANENT INJUNCTION, DATED DECEMBER 27, 2010

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

1  ROBERTSON & ASSOCIATES, LLP
   Alexander Robertson, IV (NV Bar No. 8642)
2      *arobertson@rvcdlaw.com*
   32121 Lindero Canyon Road, Suite 200
3  Westlake Village, California 91361
   Telephone:  (818) 851-3850
4  Facsimile:   (818) 851-3851

5  GREBEN & ASSOCIATES
   Jan Adam Greben (CA Bar No. 103464)
6  Admitted *Pro Hac Vice*
       *jan@grebenlaw.com*
7  1332 Anacapa Street, Suite 110
   Santa Barbara, CA  93101
8  Telephone: (805) 963-9090
   Facsimile: (805) 963-9098

9
   Attorneys for PLAINTIFFS
10

11              UNITED STATES DISTRICT COURT

12              DISTRICT OF NEVADA

13  PETER J. VOGGENTHALER;              Case No. 2:08-CV-1618
    VICTOR BECERRA; ARTHUR
14  BODENDORFER; BRENDA C.             **NOTICE OF DISPUTE PURSUANT**
    CHAFFIN; MICHAEL J. SOLMI;         **TO SECTION X(A) OF THE**
15  JASON COWLES; JANE GAUTHIER;       **PERMANENT INJUNCTION**
    HONORE GAUTHIER; NIKOLAS
16  KONSTANTINOU; DRAGAN
    KURAJICA; KENNETH LOWTHER;
17  JAMES LUEHMANN; JACQUELINE
    LUEHMANN; RUTH
18  MANNHEIMER; WILLIAM
    MONTERO; BARBARA MONTERO;
19  CLIFFORD ROGERS; SHARON
    ROGERS; HERMANN ROSNER;
20  MARKUS ROTHKRANZ; DANIEL
    SOLDINI; CHARLES WALKER;
21  VERNA WALKER; JACK
    YENCHEK; OFELIA YENCHEK;
22  RICHARD MALM; ROGER
    ELLSWORTH; JO ANN
23  ELLSWORTH; MARGARET
    RUDELICH-HOPPE; PATRICIA
24  MAHONEY, individually and as trustee
    for the MAHONEY LIVING TRUST;
25  RICHARD FALEN; PETER
    LEARNED; KRISTIAN MEIER;
26  ELIZA ACOSTA; MIRHA ELIAS;
    AIKO BERGE,
27
              Plaintiffs,
28

ROBERTSON
& ASSOCIATES, LLP

16860.1                                                    2:08-CV-1618

                        NOTICE OF DISPUTE

1   vs.

2   MARYLAND SQUARE, LLC;
    MARYLAND SQUARE SHOPPING
3   CENTER LIMITED LIABILITY
    COMPANY; HERMAN KISHNER dba
4   MARYLAND SQUARE SHOPPING
    CENTER; IRWIN KISHNER, JERRY
5   ENGEL, BANK OF AMERICA as
    Trustees for the HERMAN KISHNER
6   TRUST; CLARK COUNTY SCHOOL
    DISTRICT; THE BOULEVARD
7   MALL, as successor-in-interest/
    surviving corporation/ agent for
8   BOULEVARD ASSOCIATES, L.L.C.;
    BOULEVARD MALL I LLC, as
9   successor-in-interest/surviving
    corporation/ agent for BOULEVARD
10  ASSOCIATES, L.L.C.; BOULEVARD
    MALL II L.L.C., as successor-in-
11  interest/surviving corporation/ agent for
    BOULEVARD ASSOCIATES, LLC;
12  CONSTRUCTION DEVELOPERS
    INC.; FEDERATED WESTERN
13  DEPT. STORES, INC.; GENERAL
    GROWTH PROPERTIES; MELVIN
14  SHAPIRO; SHAPIRO BROS.
    INVESTMENT CO.; DELIA'S
15  CLEANERS OF ARIZONA, INC.; CB
    RICHARD ELLIS,
16
            Defendants.
17

18      COME NOW PLAINTIFFS, through their attorneys of record Alexander

19  Robertson, IV, Esq. of Robertson & Associates, LLP, and Jan A. Greben, Esq., of

20  Greben & Associates, who hereby serve this Notice of Dispute upon the Nevada

21  Division of Environmental Protection of the Nevada Department of Conservation

22  and Natural Resources.

23      This Notice is served pursuant to Section X(A) of the Permanent Injunction,

24  filed on December 27, 2010 in this matter.  The subject matter of the dispute is more

25  fully addressed in the attached letter from the Plaintiffs' expert, Peter Krasnoff, P.E.,

26  CEM, dated September 19, 2014 (Exhibit "1").

27  / / /

28  / / /

1      Pursuant to Section X(B) of the Injunction, NDEP has thirty (30) days, or

2  such time as set by the Court, to respond to this Notice of Dispute.

3  DATED: September 19, 2014            ROBERTSON & ASSOCIATES, LLP

4

5                                         Alexander Robertson, IV

6                                         Nevada Bar No. 8642
                                       32121 Lindero Canyon Road, Suite 200

7                                         Westlake Village, CA 91361

8                                         GREBEN & ASSOCIATES
                                       Jan Adam Greben (CA Bar No. 103464)

9                                         Admitted Pro Hac Vice
                                       1332 Anacapa Street, Suite 110

10                                      Santa Barbara, CA  93101

11                                      ***Attorneys for Plaintiffs***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that I am an employee of ROBERTSON & ASSOCIATES, LLP; that on the 19th day of September, 2014, I served true copies of the foregoing document described as **NOTICE OF DISPUTE PURSUANT TO SECTION X(A) OF THE PERMANENT INJUNCTION** on the interested parties in this action as follows:

**SERVICE LIST**

Wayne Klomp, Esq.
Office of the Attorney General
100 N. Carson Street
Carson City, Nevada 89701
email: WKlomp@ag.nv.gov

BY E-MAIL OR ELECTRONIC TRANSMISSION:  I caused a copy of the document(s) to be sent from e-mail address arusso@arobertsonlaw.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

_____
An employee of the law firm of
Robertson & Associates, LLP

ROBERTSON
& ASSOCIATES, LLP

16860.1

4

2:08-CV-1618

NOTICE OF DISPUTE

## Ann Russo

**From:** Ann Russo
**Sent:** Friday, September 19, 2014 3:44 PM
**To:** Wayne O. Klomp (WKlomp@ag.nv.gov) (WKlomp@ag.nv.gov)
**Subject:** MARYLAND SQUARE -- RCRA
**Attachments:** NTC DISPUTE_20140919153722.pdf

Notice of Dispute Pursuant to Section X(A) of the Permanent Injunction.

Thank you,
Ann ("Annie") Russo
Legal Assistant to Alexander Robertson, IV, Esq.
ROBERTSON & ASSOCIATES, LLP
32121 Lindero Canyon Road, Suite 200
Westlake Village, CA 91361
Telephone: (818) 851-3850
Facsimile:  (818) 851-3851
arusso@arobertsonlaw.com
www.aRobertsonlaw.com

Visit Robertson Mediation at **www.Rmediation.com**

*This message may contain information that is ATTORNEY-CLIENT PRIVILEGED, ATTORNEY WORK PRODUCT or otherwise PRIVILEGED or CONFIDENTIAL. If you received this communication in error please erase all copies of this message and its attachments, if any and notify us immediately.*

 *Please consider the environment before printing this e-mail*

Exhibit 1



711 Grand Avenue, Suite 220
San Rafael, California 94901
415.460.6770 • Fax 415.460.6771
main@westenvironmental.com

September 19, 2014

Alexander Robertson IV, Esq.
Robertson & Associates, LLP
32121 Lindero Canyon Rd., Suite 200
Westlake Village, CA 91361

Subject: Maryland Square Shopping Center, 3661 South Maryland Parkway, Las Vegas, Nevada

Dear Mr. Robertson:

Pursuant to your request, West Environmental Services & Technology, Inc. (WEST) has reviewed Nevada Division of Environmental Protection (NDEP) undated[1] *Proposed Plan for Cleanup of Groundwater* ("*Proposed Plan*") prepared for the Maryland Square Shopping Center at 3661 South Maryland Parkway in Las Vegas, Nevada ("the Site"). Based on our review, the *Proposed Plan* does not adequately present the bases and rationale for the selection of the proposed remedies for addressing tetrachloroethene (PCE) in groundwater emanating from the Site. In addition, the proposed remedies do not appear to be supported by the technical analyses presented in Tetra Tech's August 12, 2013 *Final Corrective Action Report for Groundwater* for the Maryland Square Shopping Center. It appears that the proposed remedy will not work, and that, if implemented, could increase the risk to the residential neighborhood. A discussion of the bases for our conclusions is presented below.

## 1.0 BACKGROUND

In August 2012, Tetra Tech, on behalf of the Herman Kishner Trust, submitted to NDEP its *Final Corrective Action Report for Groundwater*. Based on its technical evaluations, Tetra Tech recommended the use of ISCO, through injection of: (1) sodium or potassium permanganate; or (2) ozone with or without hydrogen peroxide. The ISCO injections were recommended to be conducted within the source area west of Maryland Parkway and within accessible portion of the Boulevard Mall property.

Following the submittal of the *Final Corrective Action Report for Groundwater*, NDEP has developed its *Proposed Plan* for the groundwater contamination at and emanating from the Site. Without providing supporting analyses or explanations to noted technical issues with the proposed remedial technologies, NDEP "proposes to prevent continued migration of the PCE-contaminated groundwater and to clean up the contamination using" a combination of: hydraulic containment through groundwater extraction and treatment (GWET) with *in situ* treatment with air sparge and vapor extraction (AS/VE) and/or *in situ* chemical oxidation (ISCO). The *Proposed Plan* does not include any actions to directly address subsurface vapors that have entered the indoor air within the residential community located above the groundwater contamination.

---

[1] The *Proposed Plan* is undated and does not appear to be in final form based on the blanks and highlighting of certain sections.

Alexander Robertson, IV, Esq.
September 19, 2014
Page 2



## 2.0 CLEANUP GOALS

The *Proposed Plan* identifies that long term indoor air remedial goals for the cleanup include PCE at 9.4 $\mu g/m^3$ and TCE at 6.0 $\mu g/m^3$. However, the *Proposed Plan* neither explains the bases for these remedial goals, nor addresses the short-term exposure threshold for protection of pregnant women.

In 2011, the USEPA published its Toxicological Review of *Trichloroethylene in Support of the Integrated Risk Information System* (IRIS). The USEPA concluded that "women in the first trimester of pregnancy are one of the most sensitive populations to TCE short-term inhalation exposure due to the potential for heart malformation for the developing fetus." To address the short-term exposure risk, USEPA "derived an inhalation RfC continuous inhalation exposure to TCE, which is 2 micrograms per cubic meter (2 $\mu g/m^3$)." Therefore, the *Proposed Pl*an should be modified to address the short-term indoor air protection criteria for TCE.

## 3.0 GROUNDWATER EXTRACTION

NDEP concludes in the *Proposed Plan* that a "well-designed groundwater extraction and above ground treatment system is a proven technology that will also prevent continued migration of PCE-contaminated groundwater into the neighborhood." However, a "well-designed" groundwater extraction system should consider Site-specific available information on the hydrogeology.

As presented in the *Final Corrective Action Report for Groundwater*, in July and August 2012, Tetra Tech conducted pump tests west of the Boulevard Mall to "better evaluate the feasibility of groundwater extraction as a corrective action." The tests revealed that "wells screened in the shallow water-bearing zone would produce water at very low flow rates, making them impractical for use in groundwater extraction for hydraulic control of PCE mass removal." Tetra Tech's evaluations concluded that "wells screened in the shallow water-bearing zone would produce water at very low flow rates making the impractical for use in groundwater extraction. Given the low pumping rates and the associated small capture zones, groundwater extraction for hydraulic control or PCE mass removal would be challenging within the Boulevard Mall property."

Based on these findings, Tetra Tech concluded "groundwater extraction is not a recommended corrective action." In contrast to Tetra Tech's conclusion, and without supporting rationale, NDEP is recommending groundwater extraction as a primary component of the *Proposed Plan*. The *Proposed Plan* should be modified to explain how a groundwater extraction system will provide capture of the contaminated groundwater given the findings from Tetra Tech's investigations

## 4.0 AIR SPARGING WITH VAPOR EXTRACTION

To "destroy" mass, NDEP has proposed the use of air sparging (AS) and vapor extraction (VE) as part of the *Proposed Plan*. However, NDEP does not address the noted limitations for implementing this technology at the Site.

Alexander Robertson, IV, Esq.
September 19, 2014
Page 3



Tetra Tech had identified AS/VE as a potential remedial technology "pending proof of performance." However, during investigations at the Site, a low permeable caliche layer was encountered. Due to the low permeable zone, Tetra Tech had requested that NDEP approve that AS/VE testing "be dropped from the upcoming field work because unfavorable subsurface conditions, consisting of caliche layer below the water table that had been confirmed during vertical delineation work."

In evaluating the request to cancel the pilot test NDEP responded in August of 2012:[2]

> "The NDEP agrees that trying to conduct air sparging beneath a laterally extensive and competent 2-foot thick layer of caliche is problematic...the vapor extraction system...may not be able to effectively capture the air sparged beneath the caliche. Therefore, sparging beneath the caliche my create fugitive vapors of PCE in the subsurface environment that are not adequately captured by the vapor extraction wells screened above the caliche layer. These **fugitive vapors may pose a human health risk**." [emphasis added]

Based on these findings, Tetra Tech wrote in the *Final Corrective Action Report for Groundwater*, the "AS [air sparging] pilot test was eliminated after subsurface investigations within the pilot test area revealed layers of caliche and other fine-grained soils below the lowest observed water table. Caliche layers and clayey lenses are undesirable for AS with SVE."

Because of the encountered conditions, Tetra Tech concluded in 2012 that "AS was not a viable treatment option." Therefore, the *Proposed Plan* should be modified to explain how the occurrence of the caliche layer will not create problems for the implementation of AS/VE.

## 5.0 IN SITU CHEMICAL OXIDATION

The *Proposed Plan* also includes the use of ISCO with re-circulation wells for treatment of PCE-contaminated groundwater near Maryland Parkway. As part of the development of the *Final Corrective Action Plan for Groundwater*, Tetra Tech conducted pilot testing of ISCO. While initially, the results were favorable, showing decreases in concentrations of PCE, sampling conducted of the deep-screened monitoring wells "increased from nondetect (0.50 to 0.68 µg/l) to 710 to 160 µg/l in one well."

As noted in the *Proposed Plan*, "[a]lthough results were initially promising, data collected from 3 to 12 months after injections appeared to show that PCE-contaminated groundwater had been displaced into previously clean areas. These results suggested that any cleanup technology involving injection of treatment chemicals must be paired with groundwater withdrawal to minimize the displacement of contaminated groundwater."

NDEP has also concluded in the *Proposed Plan* that the effectiveness of the ISCO "is difficult to distinguish between destruction of PCE in groundwater and displacement of PCE-contaminated groundwater." Therefore, given the noted limitations on groundwater capture with extraction wells, the *Proposed Plan* should provide an explanation how groundwater extraction could

---

[2] NDEP, Letter to Herman Kishner Trust, Maryland Square Shopping Center, SBIC and Maryland Square, LLC, Proposal for Changes in the Proposed Pilot Tests – Discontinuation of the Air Sparging and Soil Vapor Extraction Test, Al Philips the Cleaner (former), 3661 S. Maryland Parkway, Las Vegas, Nevada, Facility ID: H-000086, August 16, 2012 (NDEP, 2012).

Alexander Robertson, IV, Esq.
September 19, 2014
Page 4



prevent further displacement of PCE-contaminated groundwater to the deeper zone to control ISCO injections.

## 6.0 SUMMARY

Prior to approving the *Proposed Plan*, the following technical issues should be addressed:

- The long-term remedial goal for indoor air of 6 $\mu g/m^3$ for TCE is not consistent with USEPA directives for protection of pregnant women and developing fetuses of 2 $\mu g/m^3$.

- Air sparging was determined in the *Final Corrective Action Report for Groundwater* to "not be a viable treatment option;"

- NDEP concluded that air sparging "…fugitive vapors may pose a human health risk;"

- Pilot testing of ISCO resulted in displacement of contaminated groundwater to deeper-zones, making it difficult to determine whether this technology was effective in reducing concentrations or merely displacing the PCE-contaminated groundwater;

- Due to the noted limitations of groundwater extraction, there are no data to show that extraction combined with ISCO injections would control further displacement of PCE-contaminated groundwater to the deeper zones;

- Tetra Tech concluded that groundwater extraction for hydraulic control was "impractical" due to the very low flow rates from extraction wells, which make them "inefficient for groundwater extraction;" and

- The *Final Corrective Action Report Groundwater* concluded that "groundwater extraction is not a recommended corrective action."

**CEM Statement**

For the services provided and described in this document:

> *I hereby certify that I am responsible for the services described in this document and for the preparation of this document. The services described in this document have been provided in a manner consistent with the current standards of the profession and to the best of my knowledge comply with all applicable federal, state and local statutes, regulations and ordinances.*

We appreciate the opportunity to provide our comments on the *Proposed Plan*. Please contact us if you have any questions or wish to discuss our comments.

16859.1

Alexander Robertson, IV, Esq.
September 19, 2014
Page 5



Sincerely,

Peter M. Krasnoff, P.E., CEM
Principal Engineer
Nevada CEM 2151; Expiration April 24, 2016

cc: Mary Siders, NDEP
    Jan Greben, Greben & Associates